# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00468-CV

**Jeff Johnson, Appellant**

**v.**

**Schlotzsky's, Inc. and John C. Wooley, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN103380, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Schlotzsky's, Inc. ("Schlotzsky's") and its chief executive officer John C. Wooley ("Wooley")[1] sued Jeff Johnson ("Johnson") alleging breach of contract and various tort claims. With respect to the tort claims, Johnson filed a special appearance, which the district court denied. *See* Tex. R. App. P. 120(a). Johnson now appeals that denial arguing that, with respect to Schlotzsky's tort claims, (1) he does not have sufficient minimum contacts with Texas to support general jurisdiction over him and (2) he did not commit any acts in Texas, or direct any acts toward Texas, sufficient to give Texas courts specific jurisdiction over him. We will affirm the district court's order denying Johnson's special appearance.

---

[1] We will refer to Schlotzsky's and Wooley collectively as Schlotzsky's except where Wooley's interests diverge.

## BACKGROUND

In 1984, while living in Garland, Texas, Johnson entered into an Area Development Agreement (the "1984 Agreement") with Schlotzky's[2] by which he would open three restaurants in Lincoln, Nebraska. The 1984 Agreement called for the application of Texas law. Johnson returned to Nebraska in October 1984 and opened three restaurants over the next four years. In 1986, Johnson signed an additional franchise agreement with Schlotzsky's (the "1986 Agreement") that also called for the application of Texas law. He continued to own and operate these restaurants until 1994.

In 1991, Johnson entered into a new agreement with Schlotzsky's (the "1991 Agreement") under which he became an area developer. The 1991 Agreement required that all disputes arising out of the agreement would be arbitrated in Austin, Texas. As a franchisee, Johnson sent monthly royalty payments to Schlotzsky's corporate headquarters in Austin, and as an area developer, Johnson received a check from Schlotzsky's Austin headquarters for each franchise that he sold, as well as monthly royalty checks for a percentage of sales. In fact, these royalty payments were Johnson's only source of income from 1994 to 2001.

Additionally, Johnson entered into a management agreement with Schlotzsky's in 1995 and a Unit Development Agreement with Schlotzsky's in 1996. In 1995, Johnson borrowed money from Schlotzsky's and other Texas entities, making monthly payments to his lenders in Texas until October 2001.

Johnson frequently came to Texas for periodic meetings and training. In 1999, he attended at least five meetings in Texas that generally lasted for a day and a half. Each quarter

---

[2] Schlotzsky's is a publicly traded franchise restaurant chain with locations throughout the United States. Its corporate headquarters is in Austin, Texas.

Johnson sent a report to Schlotzsky's Austin headquarters discussing quality and service issues related to the franchisees he serviced. Johnson also communicated with the Austin headquarters on a weekly basis.

In the late 1990s, Schlotzsky's began to implement changes to its policies and business methods. Johnson opposed these changes and initiated an arbitration proceeding against Schlotzsky's, as provided for in the 1991 Agreement. Because Johnson alleged that Wooley had violated the Racketeer Influenced and Corrupt Organizations Act (RICO), *see* 18 U.S.C. § 1962 (2003), Johnson sought to bring Wooley into the arbitration even though Wooley was not a party to the 1991 Agreement. Wooley sued Johnson in federal court seeking a declaration that he could not be compelled to arbitrate and had not committed RICO violations. When the arbitrators dismissed Wooley from the arbitration, Johnson sought to have Wooley's lawsuit dismissed for lack of personal jurisdiction, but the Fifth Circuit rejected Johnson's personal jurisdiction argument. *Wooley v. Johnson*, No. 00-5077, 2001 U.S. App. LEXIS 8328, at *1 (5th Cir. Apr. 6, 2001) (not designated for publication) (stating that "case stem[med] from appellees' long-term contractual relationship with Schlotzsky's, Inc." and that Johnson's personal jurisdiction argument was "meritless"). During the seventeen-month pendency of the Texas arbitration, Johnson traveled to and stayed in Austin to arbitrate his claims. During one period of the arbitration, Johnson spent at least five weeks in Austin.

The arbitration and litigation were settled by a confidential agreement on September 26, 2001 (the "Settlement Agreement"). Johnson stopped working as an area developer for Schlotzsky's on September 26, but he continued to earn royalties on sales in his area through October

3

15, 2001. By its terms, the Settlement Agreement became effective on October 16, 2001. It contained a forum-selection clause placing venue in Travis County, Texas, and a confidentiality clause forbidding either party from disclosing the terms of the settlement and anything said and exchanged in the negotiations leading up to the settlement. Pursuant to the Settlement Agreement, Schlotzsky's also exchanged mutual general releases with Johnson. The release discharged Johnson from suits "and damages of every kind and character whatsoever" except for Johnson's confidentiality obligations under the 1991 Agreement and the Settlement Agreement.

Between July 16 and October 22, 2001, a group of individuals using a series of pseudonyms posted a number of messages on the "Yahoo! Finance BUNZ Message Board," an internet bulletin board available to the general public and directed toward investors, franchisees, and potential franchisees interested in Schlotzsky's. These messages were critical of Schlotzsky's. Schlotzsky's alleges that these statements were false, misleading, and defamatory. Schlotzsky's further alleges that Johnson conveyed confidential information and defamatory information to those actually posting the messages. Because of these messages, Schlotzsky's sued Johnson and others in Travis County for business disparagement, defamation, conspiracy, and breach of confidentiality agreements.

Because the Settlement Agreement was governed by Texas law and included a forum-selection clause placing venue in Travis County, Texas, Johnson did not contest the jurisdiction of the court with respect to the breach of confidentiality claim. He did, however, file a special appearance with respect to the tort claims. The district court denied Johnson's special appearance and Johnson's request to sever the tort claims. Johnson now appeals those denials, arguing that

4

Texas courts do not have specific or general jurisdiction over him with respect to the tort claims. Schlotzsky's replies that (1) the tort claims should not be severed from the contract claim, and (2) Johnson has minimum contacts with Texas sufficient to allow the district court to exercise both specific and general jurisdiction over him. We will affirm the district court's order denying Johnson's special appearance.

## DISCUSSION

### *Severance of the Tort Claims*

The district court denied and overruled Johnson's special appearance "based in part on the finding that the breach of contract claim and the tort claims should not be severed." We review a district court's severance decision for abuse of discretion. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). "Any claim against a party may be severed and proceeded with separately." Tex. R. Civ. P. 41. A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *State Dep't of Highways & Pub. Transp. v. Conter*, 845 S.W.2d 818, 819 (Tex. 1993); *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). "The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience." *Guaranty Fed. Sav. Bank*, 793 S.W.2d at 658.

Although Johnson meets the first two requirements of severability—this controversy involves both a contract claim and tort claims, and the tort claims would be the proper subject of a lawsuit if independently asserted—he fails to meet the third requirement because the tort claims are

5

interwoven with the contract claim. The contract and tort claims involve the same facts, and they both arise out of a single course of conduct allegedly undertaken by Johnson during the second half of 2001. Schlotzsky's alleges that during that time Johnson made a series of statements that contained a mix of truthful confidential information and defamatory assertions to parties who disseminated this information. These statements were allegedly related to Johnson's arbitration, and Schlotzsky's alleges that, by making them, Johnson both violated his confidentiality agreements *and* committed tortious acts.

The contract and tort claims also involve the same issues. For example, Schlotzsky's alleges that Johnson participated in a civil conspiracy, which is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Bentley v. Bunton*, 94 S.W.3d 561, 618 (Tex. 2002) (citations and internal quotation marks omitted). Among the unlawful acts allegedly committed to further the aims of the conspiracy was Johnson's alleged breach of his confidentiality agreements. In order to determine Johnson's liability for the tort of civil conspiracy, a fact-finder will need to determine Johnson's liability on the breach of contract claim. These determinations necessarily involve the same set of facts.

In addition, the equitable interests that justify the severance of claims weigh against severance here. Justice is better served by enabling a single fact-finder to consider the contractual relationship of these parties, the allegedly tortious conduct, and the interplay between the two. *See Guaranty Fed. Sav. Bank*, 793 S.W.2d at 658. Because Johnson has already agreed to have the contract claim litigated in Texas, the trial court's refusal to sever the tort claims will not unduly prejudice Johnson. Furthermore, simultaneous litigation of the contract and tort claims furthers

6

convenience for the parties and the courts. Therefore, the controlling reasons for a severance—to do justice, avoid prejudice, and further convenience—do not exist in this case. *See id.*

Because Schlotzsky's contract claim and tort claims are interwoven, we hold that the district court did not abuse its discretion when it refused to sever the contract and tort claims.

*Minimum Contacts*

Independent of the severance issue, the district court would still have personal jurisdiction over Johnson because of his contacts with the state. To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the defendant falls within the reach of the Texas long-arm statute. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2003). The long-arm statute reaches as far as the federal constitutional requirement of due process will permit. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). A Texas court may assert personal jurisdiction over actions that are related to the defendant's contacts with the state, as long as the contacts stem from the defendant's purposeful conduct rather than from the plaintiff's unilateral activity, such that the defendant "should reasonably anticipate being haled into court" in Texas to defend the claims. *See Burger King v. Rudzewicz*, 471 U.S. 462, 542 (1985);[3] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

[3] In *Burger King v. Rudzewicz*, the United States Supreme Court addressed facts similar to those here. 471 U.S. 462, 464 (1985). Rudzewicz was a Michigan resident who entered into a franchise agreement with a Florida corporation to open a Burger King restaurant in Michigan. *Id.* Burger King sued Rudzewicz in Florida for breach of contract, and Rudzewicz entered a special appearance arguing that the Florida court lacked personal jurisdiction over him. *Id.* at 468-69. The Supreme Court agreed with the lower courts that the franchise agreement's forum-selection clause alone was insufficient to confer jurisdiction but stated that "when combined with the 20-year interdependent relationship Rudzewicz established with Burger King's Miami headquarters, [the forum-selection clause] reinforced his deliberate affiliation with the forum State." *Id.* at 482. The

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *American Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). For a court to exercise specific jurisdiction over a non-resident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful and (2) the cause of action must arise from or relate to those contacts. *Id.* Additionally, to comport with federal due process, the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex. 1990).

Here, Johnson created his business relationship with Schlotzsky's, a Texas-based company, while he was a living in Texas. He worked for Schlotzsky's for seventeen years, first as a franchisee and then as an area developer. During this time, Johnson made numerous trips to Texas in connection with his employment. He also communicated with Schlotzsky's in Austin by fax, mail, and telephone on a weekly basis. Furthermore, Johnson received royalties from Schlotzsky's corporate headquarters in Austin and initiated arbitration proceedings against Schlotzsky's in Austin. The record is clear that Johnson's contacts with Texas were purposeful, thereby satisfying the first requirement for exercising specific jurisdiction over a non-resident defendant. *See Coleman*, 83 S.W.3d at 806.

The tort claims at issue here arise from and relate to Johnson's contacts with Texas. Johnson voluntarily entered into various contracts with a Texas-based company. These contracts,

---

Court held that the Florida court could properly exercise personal jurisdiction over Rudzewicz, even though he had never even visited the state, because the "dispute grew directly out of a contract which had a *substantial* connection with that State." *Id*. at 479 (citations and internal quotation marks omitted).

8

which called for the application of Texas law, created the business relationship that supplied Johnson with the confidential information that he allegedly disclosed, providing the basis for this lawsuit. Schlotzsky's tort claims would likely not exist but for Johnson's purposeful contacts with Texas, especially the Settlement Agreement. Because Schlotzsky's tort claims arise from Johnson's purposeful contacts with Texas, the second requirement for exercising specific jurisdiction over a non-resident defendant is satisfied. *See id.* We hold that Johnson had sufficient minimum contacts with Texas for Texas courts to assert personal jurisdiction over him. We must now determine whether the exercise of personal jurisdiction will offend traditional notions of fair play and substantial justice. *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 80 (Tex. App.—Austin 2001, pet. denied).

Texas courts consider five factors in determining whether the exercise of personal jurisdiction will offend traditional notions of fair play and substantial justice: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal Exch. Assurance*, 815 S.W.2d at 232. Because Johnson has already submitted to personal jurisdiction with respect to the contract claim, and because the contract and tort claims are interwoven, these factors weigh in favor of the assumption of jurisdiction over Johnson. First, he will not bear an additional burden by defending against the tort claims in Texas because he has already agreed to submit to personal jurisdiction in Texas with respect to the contract claim. Second, Texas has an interest in adjudicating alleged

9

transgressions against Schlotzsky's, a Texas company, and Wooley, a Texas resident.  This interest is even stronger because the contract claim is already before the Texas courts.  Third, Schlotzsky's can obtain convenient and effective relief in Texas, where its headquarters is located.  Finally, the interstate judicial system will obtain the most efficient resolution of this controversy by litigating the contract and tort claims together in Texas and avoiding severance.  We hold that, because the exercise of specific jurisdiction over Johnson does not offend traditional notions of fair play and substantial justice, the district court properly denied Johnson's special appearance.[4]  We therefore overrule Johnson's issues on appeal.

## CONCLUSION

Because the district court did not abuse its discretion by refusing to sever the contract and tort claims, and because Texas can properly exercise specific jurisdiction over Johnson with respect to the tort claims, we affirm the district court's order denying Johnson's special appearance.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed:   December 18, 2003

---

[4] Because we conclude that the district court properly denied Johnson's special appearance based upon specific jurisdiction grounds, we need not address Schlotzsky's general jurisdiction claim. *See* Tex. R. App. P. 47.1.

10