NO. 07-06-0361-CR


 07-06-0362-CR

 07-06-0363-CR

 07-06-0364-CR

 07-06-0365-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 8, 2007


______________________________



MICHAEL CODY WILLIAMS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B14449-0205; B14470-0205; A14595-0208; A14596-0208; A14597-0208;



HONORABLE ED SELF, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 In a consolidated appeal, Michael Cody Williams, appellant, appeals orders revoking
his community supervision in five cases. Appellant entered a plea of guilty without a plea
bargain in each case and was placed on community supervision in each case. 
Subsequently, the State filed motions to revoke community supervision alleging that
appellant had violated the terms and conditions of his community supervision. The trial
court found that appellant had violated his community supervision and revoked the orders
placing appellant on community supervision. The trial court assessed a term of
confinement in the Institutional Division of the Texas Department of Criminal Justice on
each case, all periods of confinement to run concurrently. We affirm.

 Appellant's attorney has filed an Anders brief and a motion to withdraw. Anders v.
California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 498 (1967). In support of his motion
to withdraw, counsel certifies that he has diligently reviewed the record, and in his opinion,
the record reflects no reversible error upon which an appeal can be predicated. Id. at 744-45. In compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App. 1978), counsel
has candidly discussed why, under the controlling authorities, there is no error in the trial
court's judgment. Additionally, counsel has certified that he has provided appellant a copy
of the Anders brief and motion to withdraw and appropriately advised appellant of his right
to file a pro se response in this matter. Stafford v. State, 813 S.W.2d 503, 510
(Tex.Crim.App. 1991). The court has also advised appellant of his right to file a pro se
response. Appellant has not favored us with a response. 

 By his Anders brief, counsel raises a ground that could possibly support an appeal,
but concludes the appeal is frivolous. We have reviewed this ground and made an
independent review of the entire record to determine whether there are any arguable
grounds which might support an appeal. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346,
102 L.Ed.2d 300 (1988); Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App. 2005). We
have found no such arguable grounds and agree with counsel that the appeal is frivolous.

 Accordingly, counsel's motion to withdraw is hereby granted and the trial court's
orders are affirmed.


 Mackey K. Hancock

 Justice

 


Do not publish. 






Normal> 

OCTOBER 1, 2004

 

______________________________

 

DONALD S. BRYANT, JR. IND. AND AS TRUSTEE OF THE

BRYANT FAMILY TRUST, APPELLANT

 

V.

 

NICHOLAS ALLEN ROBLEE, A/K/A
NICHOLAS RICHMOND,

NICHOLAS
A. RICHMOND, AND THOMAS E. ROBLEE; PREMIER MARKETING

&
INVESTMENTS, INC., A/K/A PREMIER MARKETING AND INVESTMENT COMPANY, INC.; JEWELL
MEYER; FIRST REPUBLIC BANK; EVERETT JUNG;

CALIFORNIA
FEDERAL BANK; JAE K. JUNG; LEE MCMILLIAN;

AND
JOSEPH SARANELLO,
APPELLEES

 

_________________________________

 

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2002-520,479; HONORABLE J. BLAIR
CHERRY, JUDGE

 

_______________________________

 

Before QUINN and
REAVIS and CAMPBELL, JJ.

OPINION

            Donald S. Bryant, Jr., acting
individually and as trustee for the Bryant Family Trust, brings this appeal
from an order granting a special appearance filed by appellee,
First Republic Bank. We will affirm.

            The record before us shows Nicholas Roblee, a California resident, operated
Premier Marketing & Investments, Inc., a California corporation.  Appellant Bryant, a Texas resident,
transferred $500,000 to Premier in the spring and summer of 2002 for investment
purposes.  Bryant brought suit in late
2002.  His petition alleged Roblee and Premier failed to perform as agreed and failed
to return the funds on his request.  The
petition also alleged Roblee and Premier made false
representations concerning return of the money for the purpose of delaying his
initiation of legal action against them.

            Bryant also named other defendants,
including First Republic Bank and one of its employees, Everett Jung.  His first amended petition alleged Jung
improperly had permitted Roblee and others to
exercise authority over funds held in Premiers accounts[1] at the bank, and
alleged First Republic was liable for
Jungs actions.  First Republic, a Nevada banking
corporation, filed a special appearance pursuant to Rule of Civil Procedure
120a, in which it asserted it was not, and had never been, a Texas resident and was
not otherwise amenable to process issued by Texas courts.  Following a hearing, the court signed an
order granting First Republics special
appearance.  It then severed the claims
against the other parties, creating the final judgment from which Bryant now
appeals.  

            Bryant presents four issues, all
challenging the sustention of First Republics special
appearance.  Rule of Civil Procedure 120a
provides for a special appearance by which a party may object to the courts
jurisdiction over the party on the ground that it is not amenable to process
issued by the courts of this State. 
Tex. R. Civ. P. 120a; see Hotel
Partners v. KPMG Peat Marwick, 847 S.W.2d 630 (Tex.App.Dallas
1993, writ denied).  Sections 17.041-.045
of the Civil Practice and Remedies Code provide for service of process on
nonresident defendants doing business in our state.  Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2002).  This provision of our long-arm statute
extends personal jurisdiction of Texas courts "as
far as the federal constitutional requirements of due process will
permit." BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); see American
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002).   

            The exercise of personal
jurisdiction over nonresident defendants is constitutional when two conditions
are met:  (1) the defendant has
established minimum contacts with the forum state, and (2) the exercise of
jurisdiction comports with traditional notions of fair play and substantial
justice.  International Shoe Co. v.
Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95
(1945).  Purposely established minimum
contacts may give rise in a particular case to jurisdiction that is specific or
general.  BMC Software, 83 S.W.3d
at 795.  When specific jurisdiction is
asserted, the cause of action must arise out of, or relate to, the nonresident
defendant's contact with the forum state. 
Id. at 796. Pursuant
to general jurisdiction, a forum may exercise personal jurisdiction over a
defendant even with respect to a cause of action not arising from or relating
to the defendants activities within the forum state, based on the defendants continuous
and systematic contacts with the forum state. 
American Type Culture, 83 S.W.3d at 807; BMC Software, 83
S.W.3d at 796. It requires a showing that the defendant conducted substantial
activities within the forum, a more demanding minimum contacts analysis than
for specific jurisdiction.  Id. at 797.  Determination of what constitutes continuous
and systematic contacts can be made only on a case-by-case basis.  American Type Culture, 83 S.W.3d at
810. A defendant should not be subject to a foreign court's jurisdiction based
upon "random," "fortuitous" or "attenuated"
contacts.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85
L.Ed.2d 528, 105 S.Ct. 2174 (1985).  

            A defendant challenging, by special
appearance, a Texas court's personal
jurisdiction over it must negate all jurisdictional bases alleged by the
plaintiff.  American Type Culture, 83
S.W.3d at 807; Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).  The question whether a court has personal
jurisdiction over a defendant is one of law. 
American Type Culture, 83 S.W.3d at 805-06; BMC Software,
83 S.W.2d at 794.  When the challenge to
a courts jurisdiction over a nonresident defendant requires factual
determinations that are contested on appeal, a court of appeals reviews those
determinations under the standards for legal and factual sufficiency.  BMC Software, 83 S.W.2d at 794.  In this case, the jurisdictional facts are
not disputed, so we review de novo the trial courts application of the
law to the established facts.  See
C-Loc Retention Systems, Inc. v. Hendrix, 993 S.W.2d 473, 476 (Tex.App.Houston [14th Dist.] 1999, no pet.)

            Bryant does not argue his claims
against First Republic arise from its
contacts with Texas.  He seeks a finding of general jurisdiction
over First Republic on the basis of what he alleges are its continuing and
systematic contacts with our state.[2] 
No testimony was presented at the hearing on the special
appearance.  The evidence includes an
affidavit of First Republics chief operating
officer supporting its special appearance motion and First Republics responses to
Bryants interrogatories. 

            First Republics principal office
is in Las Vegas, Nevada, and its executive
offices are in San Francisco.  As noted, Premier had two accounts at First Republic, opened at a First Republic branch in Los Angeles.  First Republic has no Texas branch, office or
other place of business, and no employees in Texas.  It does not have a Texas agent for service
of process.  Its officers affidavit
states First Republic has made an
occasional loan to a Texas resident, but does
not solicit business in Texas.  The interrogatory responses reveal First
Republic held, at the time of the response, 24 loans made during the past five
years to customers with Texas mailing addresses, in the total principal amount
of some $17,218,178,  and had a total of
37 such loans during that period.[3] 
First Republic made more than 12,000 loans during that period, and had
7340 open loans on its balance sheet at the time of the response. It held real
estate liens on eleven properties located in Texas, securing loans in
the original principal amounts of about $10,000,000.  In addition, First Republic released five
liens on Texas properties within
the past five years.  First Republic does not direct any
advertising to Texas, but does
advertise in national publications and maintain an Internet web site accessible
from Texas.

            Bryants brief emphasizes First Republics ownership of
loans secured by liens on real property in Texas. He cites no
authority in support of his premise that a nonresident corporations ownership
of loans secured by liens on Texas real property constitutes continuous and
systematic contacts with our state authorizing the exercise of personal
jurisdiction.  Ownership of real property
alone does not provide contacts sufficient to establish general jurisdiction
over a nonresident corporation.  Potkovick v. Regional Ventures, Inc., 904 S.W.2d 846,
847 (Tex.App.Eastland 1995, no writ) (foreign
corporations ownership of real property sufficient basis for jurisdiction when
property is subject of suit); see Shaffer v. Heitner,
433 U.S. 186, 208, 97 S. Ct. 2569, 53 L.Ed.2d
683 (1977); Goodenbour v. Goodenbour, 64 S.W.3d 69, 79 (Tex.App.--Austin
2001, pet. denied) (specific jurisdiction case). Merely contracting with a Texas resident is not
sufficient. Magnolia Gas Co. v. Knight Equip. & Manufac.
Corp., 994 S.W.2d 684, 691 (Tex.App.San Antonio
1998, no pet.).  Nor is correspondence
with state residents.  National Indus.
Sand Ass'n v. Gibson, 897 S.W.2d 769, 774 (Tex. 1995).  Likewise, we find that a nonresident
corporations ownership of loans secured by liens on Texas real property does
not alone give our courts general jurisdiction over the corporation.[4]  

            Bryant argues that First Republic has availed itself
of the protections of our laws by taking liens on Texas real property
because it would utilize Texas law in foreclosure
of the liens.  A similar contention could
be made with respect to the ownership of legal title to real property.  Moreover, we have no evidence First Republic ever has
foreclosed a lien on property in Texas.  That the nonresident might in the future find
it necessary to take action under Texas law to protect or
enforce its rights in its property is not evidence of continuous and systematic
contacts with our state at present. 

            Bryant also argues the quality of a
nonresident defendants contacts, not the number, should govern the minimum
contacts analysis, and that the analysis here should not be determined by the
evidence that loans with ties to Texas represent only a
small fraction of First Republics loan
portfolio.  While we must agree with that
proposition, see American Type Culture, 83 S.W.3d at 806 (noting
the quality and nature of contacts, rather than the number, to be important to
minimum contacts analysis), and while the total principal amount of First
Republics loans with ties to Texas is not inconsequential, the evidence
concerning the existence of the loans does not tell much about the quality and
nature of First Republics contacts with our state.  The evidence does not show where or in what
manner the loans were made, nor does it characterize the loan customers as
individuals or entities.  It does not
show whether the loans secured by Texas real property are
the same loans as those made to customers having a mailing address in Texas at the time of the
interrogatory responses.  As noted, the
evidence contains First Republics acknowledgment
that it has made an occasional loan to a resident of Texas, but the record
does not equate a customers having a Texas mailing address
with Texas residency.  In short, the record does not demonstrate
continuous and systematic contacts between First Republic and our state so
as to permit our courts to exercise general jurisdiction over it.  It is therefore unnecessary for us to address
Bryants arguments that the exercise of jurisdiction over First Republic in
this case would be consistent with, and would not offend, traditional notions
of fair play and substantial justice.  We
overrule Bryants issues, and affirm the order and judgment of the trial court.

 

                                                                                    James
T. Campbell

                                                                                            
Justice











            [1]Premier had two accounts at First Republic, opened at a First Republic branch in Los Angeles. 
Bryants suit does not allege the funds he transferred to Premier ever
were deposited in First Republic. 
The evidence indicates both accounts at First Republic were opened early in 2001 and
closed later that same year, several months before Bryant first invested funds
with Premier.





            [2]Bryants first amended petition also
alleged another employee of First Republic made a false representation to him
during a telephone conversation, but he does not assert it as a basis for
personal jurisdiction over First Republic.





            [3]First Republics responses also
stated, in response to an interrogatory asking the number of loans made within
the past five years which have been paid off by Texas residents, that First
Republic had closed 15 loans over the past 5 years that were made to
customers with a mailing address in Texas.





            [4]A conclusion that First Republics mere
taking of liens on Texas real property does not constitute minimum contacts
forming a basis for the exercise of personal jurisdiction, and thus does not,
standing alone, constitute doing business under the long-arm statute, is
consistent with provisions of Texas corporation law, by which foreign
corporations are not deemed to be transacting business in our state and
required to obtain a certificate of authority when they engage in transactions
such as creating, acquiring or enforcing security interests in real
property.  See Tex. Bus. Corp. Act Ann. art. 8.01, §§
B(7), B(8), B(12) (Vernon 2003).