**In re the GUARDIANSHIP OF James Stephen MILLER III, an Alleged Incapacitated Person.**

No. 05–08–00627–CV.

Court of Appeals of Texas, Dallas.

Oct. 7, 2009.

Ronald D. Gray, Geary Porter & Donovan, P.C., Addison, TX, for appellant.

John R. Norris, III, Calloway, Norris, Burdette, & Weber, Lawrence J. Friedman, Friedman & Feiger, L.L.P., Dallas, TX, for appellee.

## OPINION

Opinion By Justice WRIGHT.

Shelly Miller Goolsby and James Stephen Miller III appeal the probate judge's order finding Goolsby lacks standing in this guardianship proceeding. In three issues, Goolsby and Miller contend the probate judge erred by determining Goolsby lacked standing to participate in the guardianship proceeding. We agree with Goolsby that the probate judge erred by determining she lacked standing, render judgment denying the motion in limine with respect to Goolsby, and strike that portion of the probate judge's order precluding Goolsby from participating in this guardianship proceeding as described in parts (1), (2), (3), and (4) of section 642(b) of the Texas Probate Code.[1]

### Procedural Background

In 2007, Miller filed a petition for divorce against his wife Carol Browning Duffey–Miller (Duffey). She responded by filing an answer and various motions regarding Miller's mental capacity. The family court appointed John Norris as amicus attorney regarding the issue of Miller's mental capacity. Thereafter, Norris filed an application in the probate court seeking the appointment of a permanent guardian of the person and estate of Miller. Norris asserted Miller was partially incapacitated due to dementia caused by Alzheimer's disease and was unable to care for himself or manage his financial affairs. Norris did not seek appointment of a particular guardian in his application, but attached a "Declaration of Guardian in the Event of Later Incompetence or Need of Guardian" submitted by Miller. In that document, Miller designated Goolsby, his daughter, to serve as guardian of his person and estate; his son, John Barton Miller (Bart Miller), as first alternate guardian; and his son-in-law, Chris Goolsby, as second alternate guardian.

Miller, Goolsby, and Duffey filed answers to Norris's application. Both Miller and Goolsby asserted Miller was competent and did not need a guardian, but if the probate judge determined he was incapacitated and a guardian was necessary, Goolsby should be appointed. Miller further sought to have Duffey disqualified from serving as his guardian. Goolsby also requested that, in the event the probate judge determined Miller was "partially incapacitated," the probate judge should consider appointing an "attorney ad litem in this matter." Contrary to these assertions, Duffey claimed Miller was incompetent and his declaration was invalid, and sought appointment as Miller's permanent guardian. On December 26, 2007, Miller filed a motion in limine challenging Duffey's standing to commence or contest the proceeding. Thereafter, on January 4,

---

1. Section 642 of the probate code provides that absent an adverse interest to the proposed ward or incapacitated person, any person has standing to commence any guardianship proceeding, including restoration of a ward's capacity or modification of a ward's guardianship, or to appear and contest any guardianship proceeding or the appointment of a particular person as guardian. TEX. PROB. CODE ANN. § 642 (Vernon 2003). A motion in limine is used to challenge a person's standing to commence or contest a guardianship proceeding. *Id.*

2008, Goolsby likewise filed a motion in limine, challenging both Duffey's standing to commence or contest the guardianship proceeding and Duffey's qualifications to be appointed guardian. Finally, on January 11, 2008, Duffey filed a motion in limine challenging Goolsby's, Bart Miller's, and Chris Goolsby's standing and qualifications.

The probate judge conducted a hearing on the motions in limine. During the hearing, the probate judge stated that the parties were "characterizing this pleading as a motion in limine when it's really a motion to decide the facts of the case," and "I'm probably going to be dealing with the big picture." As a result, the probate judge had Miller brought to the courtroom so that the probate judge could personally question Miller. After doing so, the probate judge stated, "I don't think that we're eventually going to be appointing a guardian for Mr. Miller. I haven't seen a strong need for a guardian." Instead, the probate judge appointed an *attorney ad litem* and determined the probate judge would go forward with the application for guardianship if the attorney ad litem advanced the issue and suggested a guardian. Thereafter, the probate judge told the parties, "At the most, I am going to appoint a guardian for the very limited purpose of making the decisions which Mr. Miller has to make in the divorce."

Following the hearing, the probate judge signed his January 22, 2008 order granting the motions in limine regarding Duffey and Goolsby and stating they could not: (1) file an application to create a guardianship for Miller, (2) contest the creation of a guardianship for Miller, (3) contest the appointment of a person as a guardian of the person or estate, or both, of Miller, or (4) contest the application for complete restoration of Miller's capacity or modification of his guardianship. In its order, the probate judge also appointed Norris as Miller's attorney ad litem. Norris accepted his appointment as attorney ad litem on February 4, 2008.

Eleven days later, on February 15, 2008, the probate judge signed the following order:

This matter having come before the court, and the court having heard evidence and argument:

It is the finding of the court that **JAMES STEPHEN MILLER III** has sufficient mental capacity to formulate a rational desire to obtain a divorce, and to make decisions relating to a divorce action, and that it is neither necessary nor appropriate to appoint a guardian in this cause;

It is Ordered that this Cause is **ABATED,** and this Cause is hereby reassigned to the Inactive Docket of the Court.

This appeal followed.[2]

### Jurisdiction

 We begin with a determination regarding whether we have jurisdiction over this appeal. Generally, a party may only appeal from a final judgment. *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001). Similarly, except when "specifically provided by law," there may be but "one final judgment" rendered in any cause. TEX.R. CIV. P. 301. Consistent with these principles, the Texas Probate Code provides that "[a]ll final orders of any court exercising original probate jurisdiction shall be appealable to the courts of appeals." TEX. PROB.CODE ANN. § 5(g)

---

**2.** Duffey also appealed. That appeal was dismissed pursuant to a settlement agreement. *See In re Guardianship of Miller,* No. 05–08– 00448–CV, 2008 WL 3824000, at *1 (Tex. App.-Dallas Aug. 18, 2008, no pet.) (mem. op.).

(Vernon Supp. 2008). The probate code specifies that some orders are final and appealable, for example, a judgment that determines heirship. *See* TEX. PROB.CODE ANN. § 55(a) (Vernon 2003). But, this section of the probate code does not otherwise make any distinction between a final, appealable order under the probate code and any other judgment that is final for purposes of appeal.

There are, however, some unique rules regarding judgment finality that may apply to matters governed by the probate code. *De Ayala v. Mackie,* 193 S.W.3d 575, 578 (Tex.2006). These exceptions to the one-judgment rule are necessary because of the need to "review controlling, intermediate decisions before an error can harm later phases of the proceeding." *Id.* In such cases, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Id.* Both the substantial right test and the requirement outlined in *Crowson v. Wakeham,* 897 S.W.2d 779 (Tex.1995), that the order dispose of all issues in the "phase of the proceeding" for which it was brought, may be used to determine whether an "ostensibly interlocutory probate order has sufficient attributes of finality" to confer appellate jurisdiction. *See De Ayala,* 193 S.W.3d at 578. However, there is no need to resort to the unique probate rules used to determine whether a seemingly interlocutory order is appealable if the order is otherwise final. *Cf. In re Guardianship of Moon,* 216 S.W.3d 506, 509 (Tex.App.-Texarkana 2007, no pet.) (declining to discuss unique probate rules where guardianship matter became final after guardianship had been closed). Such an order is expressly appealable under section 5(g) of the probate code. TEX. PROB.CODE ANN. § 5(g). That is the situation presented in this case.

A judgment is final for purposes of appeal if it disposes of all pending parties and claims. *Lehmann,* 39 S.W.3d at 195. A final judgment need not be in any particular form; finality is determined from its language and the record in the case. *Id.* A judgment that finally disposes of all parties and claims is final, regardless of its language. *Id.* And, the language of an order *can* make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties. *Id.* If final disposition of the case is unequivocally expressed in the words of the order itself, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment. *Id.* at 200. Once the trial court disposes of all parties and claims, the trial court's preceding interlocutory judgments and orders are merged into the final judgment whether or not the interlocutory judgments or orders are specifically named within the final judgment. *Webb v. Jorns,* 488 S.W.2d 407, 409 (Tex.1972); *Campbell v. Kosarek,* 44 S.W.3d 647, 650 (Tex.App.-Dallas 2001, pet. denied); *Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 391 (Tex.App.-Corpus Christi 2000, no pet.). When determining whether an order is final, we consider the entire record in the case. *See Lehmann,* 39 S.W.3d at 195. We conduct a de novo review to determine finality because jurisdiction is a legal question. *IFS Sec. Group, Inc. v. Am. Equity Ins. Co.,* 175 S.W.3d 560, 562 (Tex.App.-Dallas 2005, no pet.).

In this case, the probate judge's order on the motion in limine left a single issue to be determined: whether a guardianship should be instituted, and if so, who should be appointed as guardian. The probate judge's February 15th order determining "it is neither necessary nor appropriate to appoint a guardian in this cause" fully resolved that issue.

The only purpose of a guardianship proceeding is to appoint a guardian with either full or limited authority over an incapacitated person. *See* TEX. PROB.CODE ANN. § 602 (Vernon 2003). A guardianship is neither necessary nor appropriate when a person is found to be competent. If the probate judge had found Miller to be incapacitated, the appropriate course of action would have been to appoint a guardian with full or limited authority over him. *See id.* The probate judge did not. A conclusion that no guardian is needed is a determination that the proposed ward has sufficient capacity to care for himself. Such a conclusion is, in effect, a finding that the person is competent, and it is an express denial of a request to form a guardianship.

■ Although there is no order in the record using the express language "the application is denied" and there were apparently no further hearings or proceedings on the application, the February 15th order is final. There is no magic language required to render a judgment final. *See Lehmann,* 39 S.W.3d at 195. Further, whether the probate judge (1) held additional hearings; (2) relied on evidence adduced at the motion in limine hearing; (3) relied on evidence that was later introduced but not recorded; (4) participated in ex parte conversations with the attorney ad litem and accepted his recommendation; or (5) heard no further evidence at all is not controlling on the question of finality. The probate judge's order states that after considering evidence, "it was neither necessary nor appropriate to appoint a guardian in this cause." Thus, the order expressly disposes of the entire case. The language of the order does not, in any way, reserve the issue of guardianship for later determination. The language of an order *can* make it final, even though it should have been interlocutory, when, as here, the language expressly disposes of all claims and all parties. Even though it may have been error for the probate judge to make his determination regarding the need for a guardian in this case without further proceedings (an issue not raised on appeal), the order is not interlocutory merely because the record fails to show an adequate legal basis for the disposition. *See id.* at 205–06.

In reaching this conclusion, we are mindful that the probate judge failed to rule on Duffey's motion in limine directed at Bart Miller and Chris Goolsby. However, the probate judge was not required to rule on Duffey's challenge to Bart Miller's and Chris Goolsby's standing to make the order final and appealable. The record in this case shows only Goolsby, Miller, and Duffey appeared and contested the guardianship proceeding. Although Bart Miller and Chris Goolsby were named as alternate guardians in Miller's declaration, neither Bart Miller nor Chris Goolsby appeared before the court. Neither of them sought nor contested, in any way, the need for or appointment of a guardian. Thus, a determination of their standing to do so was not before the court. Consequently, it was not necessary for the probate judge to rule on that portion of Duffey's motion in limine to render the February 15th order final.

Likewise, the probate judge's failure to discharge the attorney ad litem or address his compensation does not prevent the case from being final. The probate code allows for two different types of "ad litems" to be appointed, a guardian ad litem or an attorney ad litem. A "guardian ad litem" represents the best interests of an incapacitated person in a guardianship proceeding. TEX. PROB.CODE ANN. § 601(12) (Vernon Supp. 2008). An "attorney ad litem" is "an attorney who is appointed by a court to represent *and advo-*

*cate* on behalf of a *proposed* ward, an *incapacitated person,* or an unborn person in a guardianship proceeding." TEX. PROB. CODE ANN. § 601(1) (Vernon Supp. 2008) (emphasis added). An attorney ad litem is to represent a proposed ward and discuss with the proposed ward the law and facts of the case, the proposed ward's legal options and the grounds on which the guardianship is sought, as well as review the application for guardianship and medical and psychological records. TEX. PROB.CODE ANN. § 647 (Vernon 2003). The term of appointment of an attorney ad litem "expires, *without court order,* on the date the court either appoints a guardian or denies the application for appointment of a guardian, unless the court determines that the continued appointment of the attorney ad litem is in the *ward's* best interest." TEX. PROB.CODE ANN. § 646(e) (Vernon Supp. 2008) (emphasis added).

 The probate judge in this case appointed Norris as attorney ad litem. The probate judge did not make Miller a ward, nor did his order continue Norris's appointment. Thus, Norris's appointment expired when the probate judge denied the application for guardianship, and the lack of an order expressly discharging Norris as the attorney ad litem does not somehow render an otherwise final order interlocutory. Moreover, Norris has not intervened and the record does not show he has requested the court to set his compensation. Thus, there is no unresolved claim for compensation in this case. Contrary to the dissent's position, it is not necessary to set an attorney ad litem's compensation for a judgment to be final. Section 665A of the probate code specifically provides that compensation to an attorney ad litem is to be "taxed as costs in the case." TEX. PROB.CODE ANN. § 665A (Vernon 2003). A trial court is not required to assess costs for its judgment to be final. *Thompson v.*

*Beyer,* 91 S.W.3d 902, 903 (Tex.App.-Dallas 2002, no pet.).

After denying a request for the creation of a guardianship, the issue of whom to appoint is no longer necessary or appropriate and is not before the court. In our view, the *entire* guardianship proceeding, not merely a phase of the proceeding, was concluded upon the probate judge's determination there was no need for a guardian in this case. Thus, there is no need to abandon general rules of jurisdiction in favor of applying the *Crowson* "phase of the proceeding" exception. It is not necessary to apply an exception used to determine whether an *ostensibly interlocutory* probate order has sufficient attributes of finality, because the order is not ostensibly interlocutory; it is final. The exceptions to the one-judgment rule are intended to allow for review of controlling, intermediate decisions before an error can harm later phases of the proceeding. The exceptions to the one-judgment rule do not presuppose that a probate proceeding cannot be rendered final in a single proceeding.

Finally, the probate judge's order is not interlocutory because it does nothing more than abate the case. We should not disregard the probate judge's determination that it was neither necessary nor appropriate to establish a guardianship over Miller simply because the determination was recital language rather than decretal language. We agree with the dissent that the determination is a recital in the trial court's judgment. However, because there is no discrepancy between the judgment's recital and decretal paragraphs, it can be construed in such a way as to give effect to all that is written. Therefore, there is no need to conclude the decretal portion of the judgment controls. *Cf. Nelson v. Britt,* 241 S.W.3d 672, 676 (Tex. App.-Dallas 2007, no pet.) (where discrep-

ancy appears between judgment's recital and decretal paragraphs, decretal provisions control).

■ The probate judge in this case expressly determined no guardianship was needed and then abated the case. This is not ambiguous, nor is there a discrepancy about what the probate judge intended to do. The probate code does not allow a probate judge to determine a guardian is not necessary, but hold open the possibility that one might be necessary in the future, and then abate a case until such time as the judge chooses to revisit the issue. Therefore, it is unclear why, after concluding it was unnecessary to appoint either a full or limited guardian, the probate judge chose to indefinitely abate the case rather than dismiss it. *See* TEX. PROB.CODE ANN. § 692 (Vernon 2003) (requiring probate court to dismiss application for guardianship if an adult person is found to possess capacity to care for himself and manage his property).

■ We recognize that Goolsby and Miller do not challenge the propriety of the probate court's decision to abate the case. They do, however, challenge the portion of the probate judge's judgment finding Goolsby lacks standing. The abatement order leaves this case in "suspended animation" to be revived only when the reason for the abatement is removed. *See Campbell*, 44 S.W.3d at 650. To conclude the probate judge's action in doing so renders an otherwise final order interlocutory would allow the probate judge to make its final judgment immune from our jurisdiction by simply abating it. The policy of the supreme court is to avoid constructions that defeat bona fide attempts to appeal. *Crowson*, 897 S.W.2d at 783. The probate judge's order of indefinite abatement is in direct contravention of that policy. Thus, we conclude the probate judge's decision to abate rather than dismiss the case does not render the judgment interlocutory.

Because the probate judge has expressly determined it is neither necessary nor appropriate to appoint a guardian for Miller, the probate judge has fully resolved the issue of whether a guardianship will be instituted and all pending parties and claims have been disposed of. Once the probate judge disposed of the parties and issues before it, the complained-of order finding Goolsby lacked standing merged into the final order and is appealable. Having determined the order is final and appealable, we now turn to the merits of Goolsby and Miller's complaints.

## Standing

■ In their third issue, Goolsby and Miller contend the probate judge erred by ruling that Goolsby lacked standing to participate in the guardianship proceedings. After reviewing the record, we agree.

At the hearing on the motions in limine, a single witness, Natalie Ruth Thompson, provided the only evidence relevant to Goolsby's standing. Thompson testified she was Miller's bookkeeper and had worked for him for forty years. She denied that any of Miller's property had been transferred to Goolsby and her husband while the divorce was pending. She explained that a certificate of deposit in the amount of $100,000 in the name of Dallas Lyndhurst II, a business entity belonging, at least in part, to Miller, was cashed and the money loaned to Goolsby Properties. Thompson did not know the percentage of the ownership interest Miller had in Dallas Lyndhurst II, nor was she aware of what ownership interest, if any, Goolsby had in Goolsby Properties. Goolsby Properties used the money to purchase a house where Miller now lives. When the house was purchased, Miller prepaid rent in the amount of $26,000 to Goolsby Properties.

Thompson was unaware how much of the loan had been repaid by Goolsby Properties to Dallas Lyndhurst II, but she had not received any payments on the debt.

Following Thompson's testimony, and without producing further evidence regarding Goolsby's standing, Duffey argued that the evidence showed Goolsby borrowed $100,000 from Dallas Lyndhurst II and the money had not been repaid. Thus, according to Duffey, Goolsby was disqualified under section 681(7) of the probate code, and, in turn, lacked standing under section 642 of the probate code because she had an interest adverse to Miller. Duffey did not argue any other reason for Goolsby's lack of standing. At the close of the hearing, the probate judge orally granted the motion in limine against Goolsby without stating the basis for his decision. Thereafter, the probate judge signed his order granting Duffey's motion in limine against Miller, again without stating the grounds for doing so. None of the parties requested findings of fact and conclusions of law, and the probate judge did not make findings or conclusions.

▮▮▮▮▮ The issue of whether a party has standing to participate in a guardianship proceeding is a question of law. *See Cleaver v. George Staton Co.*, 908 S.W.2d 468, 472 (Tex.App.-Tyler 1995, writ denied); *see also Womble v. Atkins*, 160 Tex. 363, 331 S.W.2d 294, 297 (1960) (holding whether or not a person has an interest in an estate is reviewed de novo by the court of appeals). If no findings of fact or conclusions of law are filed or requested, all findings necessary to support the trial court's judgment are implied. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989). When, as in this case, a reporter's record is filed, the trial court's implied findings are not conclusive and may be challenged for legal

and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). We conduct our review of sufficiency challenges to implied findings under the same standards of review that govern sufficiency challenges to jury findings or a trial court's findings of fact. *See Roberson*, 768 S.W.2d at 281. Although we may not review the sufficiency of the evidence to support conclusions of law, we may review the correctness of the conclusions as drawn from the facts. *A & W Indus., Inc. v. Day*, 977 S.W.2d 738, 741 (Tex.App.-Fort Worth 1998, no pet.).

Because the only evidence and argument presented regarding Goolsby's standing was that she was indebted to Miller and was therefore disqualified under section 681(7) of the probate code, we presume that was the basis for the probate judge's conclusion that Goolsby had an interest adverse to Miller and lacked standing under section 642.

Section 681(7) of the probate code provides that a person indebted to the proposed ward cannot be appointed as a guardian unless the person pays the debt before appointment. TEX. PROB.CODE ANN. § 681(7) (Vernon 2003). Section 642 of the probate code provides as follows:

(a) Except as provided by Subsection (b) of this section, any person has the right to commence any guardianship proceeding, including a proceeding for complete restoration of a ward's capacity or modification of a ward's guardianship, or to appear and contest any guardianship proceeding or the appointment of a particular person as guardian.

(b) A person who has an interest that is adverse to a proposed ward or incapacitated person may not:

(1) file an application to create a guardianship for the proposed ward or incapacitated person;

(2) contest the creation of a guardianship for the proposed ward or incapacitated person;

(3) contest the appointment of a person as a guardian of the person or estate, or both, of the proposed ward or incapacitated person; or

(4) contest an application for complete restoration of a ward's capacity or modification of a ward's guardianship.

TEX. PROB.CODE ANN. § 642 (Vernon 2003).

The probate code does not define an interest adverse to the interest of a ward or proposed ward under section 642. Nor is there published case law analyzing or defining such an interest. Without attempting to fully define an adverse interest under section 642, we decline to conclude that evidence of a debt alone automatically rises to the level of an adverse interest sufficient to divest a person of standing under section 642. Section 681 itself allows for a person who is indebted to the proposed ward to pay the debt and be appointed as guardian. TEX. PROB.CODE ANN. § 681(7). Without evidence of the amount of the debt in relation to the estate of the ward or proposed ward, the ability or inability of the proposed guardian to repay the debt, or some other evidence such as misuse of funds to the detriment of the ward or proposed ward, we cannot conclude evidence of a debt alone automatically creates an interest so adverse to the ward or proposed ward that it would divest a person of standing to file an application to create a guardianship or to contest the creation of a guardianship, the appointment of a person as a guardian, or an application for restoration of a ward's capacity or modification of a ward's guardianship. In reaching this conclusion, we are not suggesting that a debt can never rise to the level of an adverse

interest under section 642, only that it does not automatically do so.

Further, in this case we need not determine if the $100,000 debt alone is sufficient to preclude standing under section 642 because there is no evidence in the record showing Goolsby was indebted to Miller. To the contrary, the record shows only that Goolsby Properties was indebted to Dallas Lyndhurst II. There is no evidence regarding the ownership or control of Goolsby Properties, and no evidence that Goolsby owned any interest in Goolsby Properties. Because there is no evidence to support the implied finding that Goolsby was indebted to Miller, the probate judge erred by concluding the debt created an interest adverse to Miller that would preclude Goolsby's standing to participate in this guardianship proceeding. We sustain Miller and Goolsby's third issue. Having done so, we need not address their remaining issues. *See* TEX.R.APP. P. 47.1.

We render judgment denying Duffey's motion in limine with respect to Goolsby, and strike that portion of the probate judge's order precluding Goolsby from participating in this guardianship proceeding as described in parts (1), (2), (3), and (4) of section 642(b) of the Texas Probate Code.

LANG, J. dissenting, joined by JJ. O'NEILL, RICHTER, LANG–MIERS, MURPHY, and FILLMORE.

Dissenting Opinion By Justice LANG.

The majority opinion concludes we have jurisdiction of this appeal. However, because I would conclude there is no final order or judgment in this case and we do not have jurisdiction, I respectfully dissent.

The majority determines the order granting Duffey's motion in limine pursuant to Texas Probate Code section 642(c)

as to Goolsby's standing in this guardianship proceeding has "merged into" the February 15, 2008 abatement order, the abatement order is final, and we have jurisdiction over this appeal. Premised on that conclusion, the majority then reaches the merits of the order granting the motion in limine. However, on this record, I would conclude the probate court's order granting the section 642(c) motion in limine and the abatement order are both interlocutory; therefore, we have no jurisdiction to entertain this appeal and we should not address the merits of the order granting the motion in limine.

It is my view the majority is in error because it gives no effect to the clear decretal language of the probate court's abatement order that "ABATED" the "cause," thereby showing, without question, the guardianship proceeding is not ended. Further, all claims and parties are not disposed of by the abatement order. The majority's central concern about the abatement order appears to be that the abatement order "leaves this case in 'suspended animation' to be revived only when the reason for abatement is removed." *In re Guardianship of Miller,* 299 S.W.3d 179, 187 (Tex.App.-Dallas 2009). However, the probate court's decision to "abate" or "suspend" is not before us. This is not a mandamus case where we might evaluate whether the probate court abused its discretion. Rather, it is a direct appeal from a ruling on Goolsby's standing to act as her father's guardian.

In deciding the abatement order is final, which thereby provides the avenue to review the merits of the probate court's ruling granting the motion in limine, I believe the majority fails to follow Texas Supreme Court precedent in *Lehmann v. Har-Con Corp.* (stating finality of judgment is based upon whether: (1) order "actually disposes of all claims and parties" regardless of its language, or (2) order "states with unmistakable clarity that it is final as to all claims and all parties") and *Crowson v. Wakeham* (prescribing a method of analysis for defining whether a probate order disposed of the discrete "phase" of the probate litigation and is final). *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191 (Tex.2001); *Crowson v. Wakeham,* 897 S.W.2d 779 (Tex.1995). The abatement order is not final under either test directed by *Lehmann* and the order granting the motion in limine is not final under the "phase" analysis required by *Crowson.* Accordingly, I would dismiss this appeal for want of jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The majority opinion addresses the factual context of this case. However, I offer this historical discussion of the case to emphasize facts that demonstrate why the probate court's abatement order, although clearly not final on its face, is not dispositive of all claims and parties, and there is no final judgment from which appeal may be taken.

In 2007, Miller filed a petition for divorce against his wife, Duffey. She responded by filing an answer and various motions regarding Miller's mental capacity. The family law court appointed John Norris as amicus attorney respecting the issue of Miller's mental capacity.

On November 29, 2007, Norris filed in the probate court an "Application For Appointment of Permanent Guardian of the Person and Estate" of Miller (application for guardianship). The application for guardianship broadly requested appointment of a guardian for both the person and estate of Miller and alleged, inter alia, "[t]he proposed Ward is unable to care for himself or manage his financial affairs." Norris asserted Miller was partially inca-

pacitated due to dementia caused by Alzheimer's disease. Also, he requested the court determine whether Miller should be allowed to vote or hold or obtain a driver's license. Attached to Norris's application was a Declaration of Guardian in the Event of Later Incompetence or Need of Guardian (the declaration) dated August 30, 2007, which Norris said was "purportedly signed" by Miller. The declaration designated Goolsby, Miller's daughter, as guardian. Miller's son, Bart Miller,[1] and Goolsby's husband, Chris Goolsby, were listed as alternate guardians. The declaration also stated Miller "expressly disqualified" Duffey from serving as guardian. Finally, attached to the application was a letter from Miller's physician, who stated "action" needed to be taken to "ensure patient's healthcare and financial needs" and recommended Miller not be allowed to drive.

Duffey, Miller, and Goolsby filed answers to Norris's application. In her answer, Duffey requested appointment as Miller's permanent guardian and asserted Miller's declaration was invalid because it was executed while he was suffering from dementia. In his answer, Miller asserted he did not need a guardian, but requested the probate court enforce the declaration if it found a guardian was needed. In the alternative, Miller requested the probate court disqualify Duffey from acting as guardian because of her adverse claims against him in the contested divorce proceeding. Also, Miller filed a motion in limine to challenge Duffey's standing in the guardianship proceeding. In her answer, Goolsby also asserted Miller did not need a guardian. In the alternative, she requested the probate court "use the least restrictive alternative available," such as appointing an attorney ad litem or appointing her as guardian because she already assisted her father with his needs. Also, Goolsby filed a motion in limine that challenged Duffey's standing to participate in the guardianship proceeding. Finally, Duffey filed a motion in limine challenging Goolsby's, Bart Miller's, and Chris Goolsby's standing.

Duffey and Goolsby presented their motions in limine on January 16, 2008. The reporter's record makes it clear no evidence was presented other than by Goolsby and Duffey on their respective motions. Miller was not present when the hearing started. However, during the proceedings, at the request of the probate court, Miller was called to attend the hearing. When Miller arrived, the probate court interrupted testimony from another witness and dismissed everyone from the courtroom except Miller. Then, the probate court personally conversed in a general way with Miller about, among other things, his life, the divorce action, some of his business and financial affairs, and the possibility of reconciling with his wife. This conversation was recorded electronically and transcribed as part of the reporter's record.

After the parties gave their closing arguments respecting the motions in limine, the probate court stated in discussions on the record with counsel that the court "thought" it would "appoint an attorney ad litem in this case to continue to look out for Mr. Miller, talk to Mr. Miller, and to report back to me if they perceive a need, and to have someone that Judge Roach can turn to if he perceives that he needs to get information that he's not otherwise receiving." Also, the probate court informed the parties that both motions in limine as to Duffey and Goolsby would be granted. Then, the probate court requested counsel

---

1. This person is identified in appellants' brief as Bart Miller, but in the declaration he is identified as John Barton Miller. I refer to him as Bart Miller.

confer with their clients before discussing how to get the divorce case "back on track" and "what we may want to do so far as appointing an attorney ad litem for Mr. Miller's concern." After a brief recess, counsel for both parties recommended to the probate court that Norris be appointed attorney ad litem and the probate court agreed to appoint Norris. After Miller's counsel reminded the probate court that Norris filed the original application for guardianship, the court responded in part:

> You know, if [Norris] wants to go forward with his application to appoint a guardian, I'll go forward with it, but I'm—and I haven't gone into this in depth to be thoroughly satisfied that Mr. Miller doesn't need a guardian, but I would think he needs to get through this divorce.

Then, Duffey's counsel asked a question of the probate court, resulting in the following exchange:

> COUNSEL: Is the Court still inclined— you mentioned the advantage of having a medical exam or medical—
>
> THE COURT: Well, John [Norris] can come back and advance that further. I'll consider it, but I'm going to need for John to come in and propose who is to be the guardian if it's not going to be Ms. Goolsby. . . .

After the hearing on Goolsby's and Duffey's motions in limine, the probate court signed its January 22, 2008 order granting, in part, both motions in limine, and pursuant to section 642 of the Texas Probate Code, declared Duffey and Goolsby were not allowed to participate in the proceedings as to the following: (1) filing an application to create a guardianship for Miller, (2) contesting the creation of a guardianship for Miller, (3) contesting the appointment of a person as a guardian of the person or estate, or both, of Miller, and (4) contesting the application for complete restoration of Miller's capacity or modification of his guardianship. The probate court did not address Duffey's motion in limine as to Bart Miller or Chris Goolsby. Also, in the January 22, 2008 order, the probate court appointed Norris attorney ad litem as agreed. On February 4, 2008, Norris filed his answer in the guardianship proceeding accepting his appointment as attorney ad litem.

With no further proceedings or hearings, the probate court signed an order dated February 15, 2008 that abated "the cause" and reassigned the case to its inactive docket. The order states, in pertinent part:

> It is the finding of the Court that JAMES STEPHEN MILLER III has sufficient mental capacity to formulate a rational desire to obtain a divorce, and to make decisions relating to a divorce action, and that it is neither necessary nor appropriate to appoint a guardian in this cause
>
> It is Ordered that this Cause is ABATED, and this Cause is hereby reassigned to the Inactive Docket of the Court.

Nothing in the record indicates there was ever a hearing in which either the Norris or the Duffey application for guardianship was tried. To the contrary, in the hearing described above, the court emphasized only the motions in limine were being considered. Further, the probate court announced on the record in that hearing he wanted the recommendations of the attorney ad litem as to the "need" for guardianship and when any medical examination of Miller might be considered. The record is silent as to any such recommendations. Finally, the record contains no orders granting or denying any application for guardianship or compensating or discharging Norris as attorney ad litem. Appellants challenge only the January 22,

2008 order granting Duffey's motion in limine as to Goolsby.

## II. APPELLATE JURISDICTION

Although not raised by the briefing, an appellate court must first consider whether it has jurisdiction over an appeal. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied) ("Appellate courts are obligated to review sua sponte issues affecting jurisdiction."). An appellate court reviews de novo whether it has jurisdiction over an appeal because jurisdiction is a legal question. *IFS Sec. Group, Inc. v. Am. Equity Ins. Co.,* 175 S.W.3d 560, 562 (Tex.App.-Dallas 2005, no pet.) (citing *Parks v. DeWitt County Elec. Co-op., Inc.,* 112 S.W.3d 157, 160 (Tex.App.-Corpus Christi 2003, no pet.)). If the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed. *Id.*

### A. Applicable Law

Litigants generally may appeal only from final judgments, absent statutory exceptions. *See In re Estate of Bendtsen,* 229 S.W.3d 845, 847 (Tex.App.-Dallas 2007, no pet.) (citing *Lehmann,* 39 S.W.3d at 195); *see also De Ayala v. Mackie,* 193 S.W.3d 575, 578 (Tex.2006). The Texas Supreme Court has held that:

> [I]n cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties.

*Lehmann,* 39 S.W.3d at 192–93. Probate orders are an exception to the one final judgment rule because "multiple judg-

ments final for purposes of appeal can be rendered on certain discrete issues." *De Ayala,* 193 S.W.3d at 578 (quoting *Lehmann,* 39 S.W.3d at 192). However, not every interlocutory order in a probate case is appealable. *Id.* Factors to be considered include whether the order adjudicated a "substantial right" and whether "the order dispose[d] of all issues in the phase of the proceeding for which it was brought." *Id.* (quoting *Crowson,* 897 S.W.2d at 783). An order that "sets the stage for the resolution of all proceedings," but does not end a phase of the proceedings, is interlocutory. *Id.* at 579.

### B. Application of the Law to the Facts

As stated above, it is my view there is no final order or judgment disposing of all claims and parties in this guardianship proceeding. The last order in the record is the abatement order that clearly and expressly stated the "Cause is ABATED." The abatement order does not meet either of the tests of finality of the *Lehmann* case, which the majority opinion says it follows.

The majority opinion anticipates and discusses some of the points I make in this dissent. With due respect to the majority, I will address those and other points in depth.

First, the majority construes the abatement order as a final judgment denying the application for guardianship. However, appellants did not appeal from a judgment disposing of the guardianship proceeding or from the abatement order. The appeal is solely from the granting of the motion in limine disqualifying Goolsby. Appellants do not attack or address the abatement order, but acknowledge there is no statutory exception that identifies as an appealable order the granting of a motion in limine under section 642 of the probate

code. The majority addresses the relationship of the two orders by stating the order granting the motion in limine is "merged into the" abatement order. Then, the majority says the abatement order "expressly disposes of the entire case" and is final because, in addition to abatement, the order stated "it is neither necessary nor appropriate to appoint a guardian in this cause." However, the language cited by the majority in the abatement order is a recital, i.e., not the probate court's order. Any "factual recitations or reasons preceding the decretal portion of a judgment form no part of the judgment itself." *Nelson v. Britt,* 241 S.W.3d 672, 676 (Tex.App.-Dallas 2007, no pet.) (citing *Alcantar v. Okla. Nat'l Bank,* 47 S.W.3d 815, 823 (Tex.App.-Fort Worth 2001, no pet.)); *see also Crider v. Cox,* 960 S.W.2d 703, 704 (Tex.App.-Tyler 1997, writ denied) (same). The probate court's abatement order is not cryptic or ambiguous. It expressly abates the case.

Second, the majority anticipates and disagrees with my determination that the decretal portion of the abatement order controls. The majority cites *Nelson,* as do I, for the general principle that where there is a discrepancy between the judgment's recital and decretal paragraphs, the decretal portion controls. *See Nelson,* 241 S.W.3d at 676. Yet, the majority suggests there is "no discrepancy" between the recital and decretal paragraphs so there is "no need to conclude the decretal portion of the judgment controls." With respect, I suggest the majority's statement there is "no discrepancy" is in conflict with its major premise. The major premise of the majority's conclusion is that, indeed, there is a "discrepancy" between the recital and decretal paragraphs because, in the majority's view, abatement is improper. The majority says unequivocally that "[t]he probate code does not allow for a probate judge to determine a guardian is not nec-

essary, but hold open the possibility that one might be necessary in the future, and then abate a case until such time as the judge chooses to revisit the issue." *In re Guardianship of Miller,* 299 S.W.3d at 187. The abatement of the case is unequivocal and, under the majority's view, the finding of lack of need of a guardianship is obviously in conflict with the abatement. Our Court has made it abundantly clear that "where there appears to be a discrepancy between the judgment's recital and decretal paragraphs, a trial court's recitals, which precede the decretal portions of the judgment, do not determine the rights and interests of the parties." *Nelson,* 241 S.W.3d at 676 (citing *Alcantar,* 47 S.W.3d at 823); *see also Crider,* 960 S.W.2d at 704. The decretal provisions in the judgment control. *See Nelson,* 241 S.W.3d at 676.

Third, I believe a review of the entire record demonstrates the abatement order is not a final judgment. *See Lehmann,* 39 S.W.3d at 198 (when determining whether an order is final, the entire record must be considered). Here, consideration of the entire record reflects the probate court did not hold a hearing or make a determination on all of the issues raised by Norris's application for guardianship, but, indeed, intentionally abated the proceeding.

Several bases and reasons for creating a guardianship were raised by Norris in his application for guardianship. In that application, he requested the probate court appoint a guardian, inter alia, because Miller was "unable to care for himself or to manage his financial affairs," and asked the court to determine whether Miller should be allowed to vote or hold or obtain a driver's license. Attached to Norris's application was a physician's letter in which Miller's physician stated "action needs to be taken to ensure patient's healthcare and financial needs" and recom-

mended Miller not be allowed to drive. Further, Norris attached Miller's declaration that designated Goolsby as guardian and listed Bart Miller and Chris Goolsby as alternative guardians.

The record disclosed the probate court only considered Norris's application for guardianship summarily as to the divorce proceeding in the abatement order. In the hearing on the motions in limine, the probate court merely stated on the record it "[had not] gone into this in depth to be thoroughly satisfied that Mr. Miller doesn't need a guardian, but I would think he needs to get through this divorce." The record reflects no consideration of current and relevant medical, psychological, and intellectual testing records of Miller, nor the physician's findings and recommendations that were a part of the application.[2] Also, in the hearing on the motions in limine, the probate court identified Miller's health as an issue, but the record reflects that at some point during that hearing the probate court merely commented that having a medical exam would be an "advantage." The probate court interrupted Duffey's counsel's question about that comment, saying, "Well, John [Norris] can come back and advance that further." It is clear the probate court's purported "findings" in its February 22 abatement order that focused sole-

ly on the family court proceedings do not address critical issues as to whether Miller was able to maintain his health, manage his financial affairs, or should be allowed to vote or drive as requested in Norris's application for guardianship and addressed in the physician's letter.

Fourth, I disagree with the majority when it says the probate court's failure to discharge Norris from his appointment and address his compensation as attorney ad litem does not prevent the case from being final. It is clear these are unresolved issues that prevent the order from being final. *See Lehmann*, 39 S.W.3d at 192–93. Norris accepted his appointment as attorney ad litem on February 4, 2008. The majority asserts Norris's appointment expired eleven days later without court order, pursuant to section 646 of the probate code, because a guardian was not appointed. *See* TEX. PROB.CODE ANN. § 646 (Vernon Supp. 2008). Yet, this conclusion is not consistent with the record. The probate court appointed Norris "to report back to me if they perceive a need" throughout the divorce proceeding in the family court. The record does not reflect the divorce proceeding was terminated prior to the February 15, 2008 abatement order. *See also In re Guardianship of Miller*, No. 05–08–00448–CV, 2008 WL

---

2. Section 686 of the probate code provides:
Use of Records in Hearing to Appoint Guardian
(a) Before a hearing may be held for the appointment of a guardian, current and relevant medical, psychological, and intellectual testing records of the proposed ward must be provided to the attorney ad litem appointed to represent the proposed ward unless:
. . .
(2) the court makes a finding on the record that no current or relevant records exist and examining the proposed ward for the purpose of creating the records is impractical.

(b) Current medical, psychological, and intellectual testing records are a sufficient basis for a determination of guardianship.
(c) The findings and recommendations contained in the medical, psychological, and intellectual testing records are not binding on the court.
TEX. PROB.CODE ANN. § 686 (Vernon 2003); *see also Trimble v. Tex. Dep't of Protective & Regulatory Serv.*, 981 S.W.2d 211, 218 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (filing of physician's report with application for guardianship fulfills medical records requirement in section 686(a) of probate code).

3824000, at \*1 (Tex.App.-Dallas Aug. 18, 2008, no pet.) (mem. op.) (granting Duffey's August 8, 2008 motion to dismiss because "the parties have reached a settlement in mediation").

Further, the majority contends (1) because Norris has not intervened and the record does not show he has requested the court to set his compensation, there is no unresolved claim for compensation in this case, and (2) it is not necessary to set an attorney ad litem's compensation for a judgment to be final. With regard to the first contention, I respectfully suggest Norris had no reason to intervene in this case or request the court to set his compensation until the conclusion of the case. The abatement order's clear language did not give notice it was final and would not cause a compensation-seeking attorney ad litem to act. As to the majority's second contention, the majority cites section 665A of the probate code for the proposition that compensation to an attorney ad litem is to be "taxed as costs in the case." Tex. Prob.Code Ann. § 665A (Vernon 2003). Further, citing *Thompson v. Beyer,* 91 S.W.3d 902, 903 (Tex.App.-Dallas 2002, no pet.), the majority asserts a trial court is not required to assess costs for its judgment to be final. However, weighing strongly against a construction of finality is the fact that, on the record, the probate court charged Norris with the responsibility to watch out for Miller and "report back." Further, there is nothing in the record suggesting Norris was to be terminated as attorney ad litem without compensation. Therefore, I cannot agree with the majority's position that the abatement order is final regardless of whether it addressed Norris's status or compensation.

As stated above, Norris's status as attorney ad litem began when he accepted his appointment on February 4, 2008. Goolsby filed a motion for new trial on February 20, 2008, challenging the probate court's January 22 order granting the motions in limine. That motion, if considered under the majority's position, was overruled by operation of law, and the probate court's plenary power expired no later than 105 days after the "final" judgment on May 30, 2008. *See* Tex.R. Civ. P. 329b(c), (e). The record is clear that the probate court did not tax Norris's compensation as costs before its plenary power would have expired on May 30, 2008. Accordingly, the majority's conclusion that the February 15 abatement order is final has the effect of denying Norris compensation for any services performed as the probate court's appointed attorney ad litem. *See Sheehan v. S. Pac. Co.,* 422 S.W.2d 948, 950–51 (Tex.App.-Houston [1st Dist.] 1968, writ ref'd n.r.e.) (court-appointed "attorney ad litem" not entitled to compensation because trial court was required to tax ad litem's compensation as costs and could not do so after its plenary power expired). Although there is authority to the effect an order could be final even though costs have not been taxed, that proposition simply does not address nor answer the logical question about Norris's compensation being an unresolved issue that demonstrates the lack of finality of the order. *Lehmann,* 39 S.W.3d at 192–93.

Finally, it is my view the central difficulty of the majority with the abatement order is that it is "unclear why" the probate court chose to abate rather than dismiss, thereby placing the case in "suspended animation." *In re Guardianship of Miller,* 299 S.W.3d at 187. However, the merits of the probate court's decision to abate are not before us, and I find no authority authorizing us to evaluate the merits of the abatement order in this direct appeal of the order granting the motions in limine. We may not ignore the clear language of the probate court's abatement order and

effectively re-write that order because, on appeal, we may not agree with the probate court's decision to abate. *See Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 97 S.W.3d 731, 734 n. 2 (Tex.App.-Dallas 2003, no pet.) (interlocutory abatement order not appealable, but subject to writ of mandamus); *In re Gore*, 251 S.W.3d 696, 700–01 (Tex.App.-San Antonio 2007, orig. proceeding) (mandamus granted ordering trial court to vacate indefinite order of abatement); *In re Sims*, 88 S.W.3d 297, 306 (Tex.App.-San Antonio 2002, orig. proceeding) (same); *see also Bennett v. Leas*, No. 13–04–362–CV, 2005 WL 608289, at *1 (Tex.App.-Corpus Christi Mar. 17, 2005, pet. denied) (mem. op.) ("order of abatement is not an authorized interlocutory appeal"); *Serrano v. Union Planter's Bank, N.A.*, 155 S.W.3d 381, 382 (Tex.App.-El Paso 2004, no pet.) (order granting motion to abate is interlocutory and not appealable); *Harper v. Welchem, Inc.*, 799 S.W.2d 492, 496 (Tex.App.-Houston [14th Dist.] 1990, no writ) (order granting abatement not appealable); *Bills v. Braswell*, 534 S.W.2d 434, 435 (Tex.Civ.App.-Texarkana 1976, orig. proceeding) (same).

I would conclude, if an analysis following *Lehmann* is utilized, the abatement order did not dispose of the issues raised by the application for guardianship or the appointment or compensation of the attorney ad litem and the case remains in interlocutory status. Moreover, I believe the *Lehmann* analysis used by the majority is inapplicable to this probate case. *See Lehmann*, 39 S.W.3d at 192 ("We consider only cases in which one final and appealable judgment can be rendered and *not cases, like some probate* and receivership *proceedings, in which multiple judgments final for purposes of appeal can be rendered on certain discrete issues*." (citing *Crowson*, 897 S.W.2d at 783 (involving probate proceedings))) (emphasis added).

Rather, an appellate court should address the question of whether the order granting the motions in limine is reviewable on appeal using the analysis directed by the Texas Supreme Court for probate proceedings. We must decide whether the order adjudicated a "substantial right" and disposed of all parties and issues in a particular phase of the proceedings or whether it merely "set the stage for resolution of the proceedings." *See De Ayala*, 193 S.W.3d at 579. However, as described below, not even under that analysis can the order appealed from be considered final and appealable.

The *De Ayala* case, although not a guardianship case, is instructive. *See id.* at 576–80. Brittingham, a Mexican resident, died in Mexico where a probate proceeding was initiated. *Id.* at 576–77. Subsequently, the decedent's wife filed an application to have his will admitted to probate in Webb County, Texas. *Id.* at 577. De Ayala, a daughter of the decedent, moved to dismiss claiming the Texas trial court lacked subject matter jurisdiction. She moved in the alternative to have Ms. Brittingham removed as executor. The motions were denied and De Ayala appealed. At the court of appeals, the estate and the son of the decedent moved to dismiss the appeal for lack of subject matter jurisdiction. The court of appeals concluded both it and the trial court had jurisdiction over the proceeding, but Ms. Brittingham should be removed as executor due to a conflict of interest. The Texas Supreme Court disagreed with the court of appeals, deciding the court of appeals had no jurisdiction. *Id.* at 580. The appeal was dismissed.

The supreme court clarified rules articulated in prior opinions, in particular the rule stated in *Crowson*, respecting whether "an otherwise interlocutory probate order is final enough to qualify for appeal." *Id.*

at 578. The rule in *Crowson* was quoted by the court:

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Id.* (quoting *Crowson*, 897 S.W.2d at 783). Moreover, the supreme court observed that in *Crowson*, the "order was interlocutory because it did not dispose of all parties or issues in a particular phase of the proceedings." *Id.* at 579. Finally, the supreme court ruled in *De Ayala*, "[b]ecause an order denying a plea to the jurisdiction and refusing to remove an executor does not end a phase of the proceedings, but sets the stage for the resolution of all proceedings, the order is interlocutory." *Id.*

At the center of this case, in particular, is Norris's application for the appointment of a guardian for Miller's person and estate. Norris noted in the application that Miller had "purportedly signed" a declaration, which named Goolsby, Bart Miller, and Chris Goolsby as alternate guardians. Norris's application was contested by Duffey. Miller's and Goolsby's answers also contested the guardianship, but stated, in the alternative, either an attorney ad litem should be appointed or Goolsby should be appointed as guardian. The motions in limine of Duffey and Goolsby were as integral to the guardianship proceeding as the answers contesting the application for guardianship. However, the ultimate issue in the proceeding is not whether Goolsby is disqualified under section 642 of the probate code. Rather, the issue at this point in the guardianship proceeding is whether a guardianship will be instituted, and, if it is, who would be appointed guardian. In this context, I would conclude the "phase" of the proceeding, for the purposes of determining appealability of the order in question, is the determination of the necessity of a guardianship and the appointment of a guardian. *See id.*

Next, I would determine whether the order in question adjudicated appellants' "substantial right" and disposed of that "phase" of the proceeding. *See id.; Crowson*, 897 S.W.2d at 782–83. Both applications for guardianship made a broad request for appointment of a guardian. In its February 15, 2008 abatement order, the probate court recited only that Miller had sufficient mental capacity specifically for the purposes of the divorce and "it is neither necessary nor appropriate to appoint a guardian in this cause." The fact that the probate court made this statement in the abatement order simply does not dispose of the claims and parties in this "phase" because the broadly pled application for guardianship that addressed Miller's alleged incapacity "to care for himself or manage his financial affairs" was, according to the clear record, never heard by the probate court, hence not decided, and was "abated." Further, the probate court announced on the record it wanted the recommendations of the attorney ad litem as to the "need" for guardianship and when any medical examination of Miller might be considered. The record is silent as to any such recommendations. The probate court has not denied either application, the abatement order leaves intact Norris's appointment as attorney ad litem in the guardianship proceeding, and Norris's compensation for his services in that regard has not been addressed by the

probate court.[3] Finally, Duffey's motion in limine not only attacked the standing of Goolsby, but also sought to disqualify Bart Miller and Chris Goolsby. The probate court did not rule on the part of Duffey's motion that addressed the standing of Bart Miller or Chris Goolsby to serve as guardian under the declaration. With all of these matters pending, the central issue in the proceeding certainly remains undecided and the "phase" of the guardianship proceeding is not at an end.

Assuming without deciding Goolsby's "substantial right" was adjudicated by the January 22, 2008 order, the merits of the probate court's ruling on Duffey's motion in limine cannot be addressed now on appeal because that ruling merely sets the stage for resolution of the phase of the guardianship proceeding. *See De Ayala,* 193 S.W.3d at 579; *Crowson,* 897 S.W.2d at 782–83. A party may still seek relief in the probate court to set aside the abatement order, proceed with a guardianship application, and ask the court to rehear the motions in limine.

Whether analyzed under the *Crowson* phase analysis, or even under a *Lehmann* analysis, the abatement order is not final because it does not dispose of all claims and all parties, nor is it final on its face. *Lehmann* guides us to determine finality based upon whether a judgment: (1) "actually disposes of all claims and parties then before the court, regardless of its language"; or (2) "states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Lehmann,* 39 S.W.3d at 192–93. A review of the record demonstrates that all claims and all parties are not disposed of "regardless" of the order's language, and the abatement order plainly does not state it disposes of all claims and all parties. Neither of the *Lehmann* tests is met in this case. *See id.* at 192 ("We consider only cases in which one final and appealable judgment can be rendered and *not cases, like some probate* and receivership *proceedings, in which multiple judgments final for purposes of appeal can be rendered on certain discrete issues.*" (citing *Crowson,* 897 S.W.2d at 783 (involving probate proceedings))) (emphasis added).

Accordingly, I would conclude the probate court's order granting Duffey's motion in limine as to Goolsby's standing is not a final, appealable order because it does not dispose of all claims and parties in the relevant phase of the guardianship proceeding.

## III. CONCLUSION

In my view, the probate court's order granting the section 642(c) motion in limine as to Goolsby's standing in this guardianship proceeding is not a final, appealable order. Accordingly, I would determine the appeal should be dismissed for want of jurisdiction.

---

**3.** The probate court has an obligation under the probate code to address compensation of its attorney ad litem. *See* Tex. Prob.Code Ann. § 646(a) ("In a proceeding under this chapter for the appointment of a guardian, the court *shall* appoint an attorney ad litem to represent the interests of the proposed ward.") (emphasis added); *Id.* § 665A ("The court *shall* order the payment of a fee set by the court as compensation to the attorneys ... appointed under this chapter ... to be taxed as costs in the case.") (emphasis added).