

**NUMBER 13-09-00560-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**IN THE GUARDIANSHIP OF ARMANDO GARCIA CARDENAS, AN INCAPACITATED PERSON**

**On appeal from the County Court at Law No. 1 of Cameron County, Texas.**

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Yañez and Garza**
**Memorandum Opinion by Chief Justice Valdez**

In this accelerated interlocutory appeal, appellant, Armando Garcia Jr., challenges various orders entered by the trial court in proceedings involving the guardianship of appellee, Armando Garcia Cardenas, an allegedly incapacitated person residing in Mexico. By three issues on appeal, appellant argues that the trial court erred in: (1) granting appellee's special appearance; (2) denying appellant's motion for continuance to permit additional discovery regarding personal jurisdiction; and (3) denying appellant's motion for

substitute service on appellee and two other interested parties.  We affirm.

## I. BACKGROUND

On August 11, 2009, appellant filed an application to appoint himself temporary guardian of appellee's person and estate.[1]  Appellant is appellee's son.  Appellee, an eighty-four-year-old male allegedly dealing with various physical and mental health illnesses,[2] lived with his wife, Carmen Del Fierro De Garcia, in Valle Hermosa, Tamaulipas, Mexico and is a well-known agricultural businessman in Mexico.  Appellant noted in his guardianship application that, while appellee has been incapacitated, appellee's assets, worth in excess of $1 million, "have unlawfully been expropriated by [appellee's] two daughters, Blanca Esthela Garcia Del Fierro and Marvelia Garcia Del Fierro."  Appellant requested that he be named appellee's temporary guardian to manage appellee's "financial affairs until [he] regains his complete mental faculties, to recover any asset which has been improperly or illegally expropriated and to take [appellee] into his custody in order to immediately care for hi[m] and provide hi[m] with necessary protection to ensure his safety and welfare."  In addition to his guardianship application, appellant filed an application for injunctive relief, seeking to enjoin the Del Fierro sisters from expropriating any of appellee's remaining assets and [from] interfering with the possession and care of appellee.

Also on August 11, 2009, appellant filed requests to have the Del Fierro sisters and

---

[1] Appellant brought a parallel guardianship proceeding against appellee's wife, Carmen Del Fierro De Garcia, seeking to be named her temporary guardian as well.  However, while the parallel proceeding was pending in this Court, appellee's wife passed away, and, pursuant to a motion to dismiss, this Court dismissed the proceeding as moot.  *See In re Del Fierro De Garcia*, No. 13-09-00559-CV, 2010 Tex. App. LEXIS 1612, at *1 (Tex. App.–Corpus Christi Mar. 4, 2010, no pet.) (mem. op.) (per curiam).

[2] In his guardianship application, appellant alleges that his father suffers from "blindness, cerebral atrophy with resulting disorientation in time and location, and chronic myocardial ischemia."

2

appellee served with process.[3] The citations of service for the Del Fierro sisters were returned with the notation that neither individual could be found; therefore, neither of the sisters were properly served. In the meantime, on August 21, 2009, the trial court appointed Ruben Herrera, an attorney licensed in the State of Texas, as an attorney ad litem representing appellee and set the hearing on the dispute for August 25, 2009. However, pursuant to a request filed by appellant, the trial court re-set the hearing for September 9, 2009.[4]

On August 28, 2009, attorney Lilia A. Gonzales filed a special appearance on behalf of appellee, objecting to the trial court's jurisdiction over appellee's person and estate.[5] In this filing, Gonzales asserted that she represented Guadalupe Cortez Gonzalez, an attorney licensed in Mexico, who, in turn, represented appellee in all personal and legal matters in Mexico. Gonzales also asserted that appellee: (1) lives in Mexico; (2) has never been a resident of or domiciled in Texas; (3) has a B1/B2 visa, which only allows him to visit, not live, in the United States; and (4) has not "done any act or committed any deed to submit himself . . . to the jurisdiction of this court."[6]

---

[3] According to the service citations, appellant believed that the Del Fierro sisters, appellee, and appellee's wife lived together at a house located at 809 Morelos in Rancho Viejo, Cameron County, Texas.

[4] In support of his request to re-set the hearing on his guardianship application, appellant alleged that he was unable to properly serve appellee with notice.

[5] Appellee subsequently filed a brief in support of his special appearance; attached to the brief were several affidavits of appellee's neighbors in Mexico and exhibits establishing that appellee is a Mexican voter and has always resided in Mexico.

[6] Appellant executed an affidavit wherein he asserted that when appellee visited the United States, he deposited cash and other assets into various accounts at Chase and IBC banks located in Brownsville, Texas, and that appellee owned a community property interest in the house located at 809 Morelos in Rancho Viejo. With respect to the house, the record contains a report generated by the Cameron County Appraisal District, which indicates that appellee's wife is the sole owner of the house. It is not clear from the record whether appellee has an ownership interest in the house.

3

On September 2, 2009, appellant filed a motion to substitute service for appellee.[7] *See* TEX. R. CIV. P. 106. Among the items attached to this motion was an affidavit executed by Cameron County Sheriff's Department Deputy Refugio Perez Jr., who averred that numerous attempts were made to serve appellee at the residence located at 809 Morelos in Rancho Viejo, Texas. However, Deputy Perez noted that he spoke to neighbors who told him that the house was always empty and that no one appeared to live there.

On September 4, 2009, appellant notified the trial court via a letter that he had not been able to serve appellee and requested an additional forty-five days to get appellee served. In light of appellant's request and appellee's filing of his special appearance, the trial court set the hearing on all pending motions for September 15, 2009. On September 10, 2009, appellant filed a verified motion to continue the September 15, 2009 hearing, requesting that he be given an additional sixty days to serve appellee and investigate the claims made by appellee in his special appearance. This motion was denied, and the hearing took place as scheduled on September 15, 2009.

At the hearing, appellant orally moved the trial court to continue the case, but this request was denied. After hearing arguments, the trial court granted appellee's special appearance and dismissed the case.[8] On September 28, 2009, appellant filed a request for findings of fact and conclusions of law. The trial court filed its findings of fact and

---

[7] Appellant requested that service on appellee be authorized by leaving a true copy of the citation and petition with anyone residing at the house that is older than sixteen years old or by attaching a true copy of the citation and petition to the front door of the house. *See* TEX. R. CIV. P. 106(b).

[8] In granting appellee's special appearance, the trial court stated that it was dismissing the case for lack of jurisdiction. The trial court did not explicitly rule on appellant's motion for substituted service; however, the parties agree that, by dismissing the case for lack of jurisdiction, the trial court implicitly denied appellant's motion for substituted service.

conclusions of law on October 12, 2009. This accelerated interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon 2008); *see also* TEX. R. APP. P. 28.1(a).

## II. SPECIAL APPEARANCE

In his first issue, appellant argues that the trial court erred in granting appellee's special appearance because: (1) the special appearance did not allege facts that defeated "general or specific jurisdiction"; (2) the special appearance is defective; (3) the affidavits relied upon by appellee cannot be used to support the special appearance because they were executed in Mexico and perjury in Texas did not attach[9]; and (4) appellee failed to comply with the requirements of Texas Rule of Civil Procedure 120a. *See* TEX. R. CIV. P. 120a. Appellee asserts that his bank accounts and his wife's ownership interest in the Cameron County house do not amount to "substantial activity" that would subject him to the general or specific jurisdiction of the Texas court system, especially considering he has lived in Mexico his entire life. Appellee also contends that appellant's complaint regarding the affidavits focuses solely on the fact that the affidavits lack an Apostille certification[10] and does not challenge the fact that appellee is a resident of Mexico.

---

[9] We need not address appellant's contention regarding the affidavits because the testimony contained therein is cumulative of other evidence in the record to which no objection was made, namely the statements of Herrera, appellee's attorney ad litem, and the notes contained in the service citation and affidavit executed by Deputy Perez. *See* TEX. R. APP. P. 47.1; *see also Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008) (stating that the admission or exclusion of evidence is likely harmless if the evidence was cumulative of other evidence in the record).

[10] An Apostille certification "certifies the authenticity of the signature, the capacity in which the person signing the document has acted, and identifies the seal/stamp which the document bears." Hope Andrade, Tex. Sec'y of State Website: Authentication of Documents—Frequently Asked Questions, http://www.sos.state.tx.us/authfaqs.shtml (last visited June 1, 2010). The Apostille certification was first created by the 1961 Hague Convention, to which the United States became a subscriber in 1981. *Id.* The certification allows for the verification of documents from different countries. *Id.*

5

**A. Special Appearance and Personal Jurisdiction**

The existence of personal jurisdiction is a question of law; however, the proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. *See Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex. App.–Austin 2001, pet. denied) (citing *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 715 (Tex. App.–Austin 2000, pet. dism'd w.o.j.)). In such cases, we must determine the appropriateness of the trial court's resolution of those disputes by an ordinary sufficiency of the evidence review based on the entire record. *Id.* (citing *Conner v. Conticarriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex. App.–Houston [14th Dist.] 1997, no writ)). However, if the trial court's order is based on undisputed or otherwise established facts, then we conduct a de novo review of the order. *Id.*; *see Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

In reviewing a point of error challenging the sufficiency of the evidence supporting a special appearance order, we must consider and weigh all of the evidence, including evidence that tends to prove the existence of a vital fact and that which tends to disprove its existence. *Id.* (citing *Ames v. Ames*, 776 S.W.2d 154, 158-59 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). In considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the finding should be set aside, regardless of whether some evidence supports it. *Id.* We review the legal conclusions supporting the judgment to determine whether they are correct

as a matter of law. *Id.* (citing *Lawrence v. Kohl*, 853 S.W.2d 697, 699 (Tex. App.–Houston [1st Dist.] 1993, no writ)); *see Kelly*, 301 S.W.3d at 660.

"A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees." *Kelly*, 301 S.W.3d at 657 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990)); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.045 (Vernon 2008) (codifying the Texas long-arm statute). "Personal jurisdiction is consistent with due process 'when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moki Mac*, 221 S.W.3d at 575).

The plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *BMC Software*, 83 S.W.3d at 793. However, when a special appearance is filed, the nonresident defendant assumes the burden of negating all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *see El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.–Corpus Christi 2002, pet. dism'd w.o.j.). The trial court determines the special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. TEX. R. CIV. P. 120a(3).

A nonresident's forum-state contacts may give rise to two bases of personal jurisdiction, "general" and "specific." *Moki Mac*, 221 S.W.3d at 575. General jurisdiction is established if the nonresident has made "continuous and systematic" contacts with the forum, even if the cause of action does not arise from or relate to activities conducted within Texas. *Id.* Specific jurisdiction, which is at issue in this case, arises when: (1) the defendant purposefully avails itself of conducting activities in the forum state; and (2) the cause of action arises from or is related to those contacts or activities. *BMC Software*, 83 S.W.3d at 795; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). In determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338-39 (Tex. 2009); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Thus, in analyzing minimum contacts for the purpose of determining Texas courts' specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation." *Goodenbour*, 64 S.W.3d at 79 (citing *Televentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 907 (Tex. App.–Austin 2000, pet. denied)).

## B.     Guardianship Proceedings

The only purpose of a guardianship proceeding is to appoint a guardian with either

full or limited authority over an incapacitated person. *See* TEX. PROB. CODE ANN. § 602 (Vernon 2003); *see also In re Miller*, 299 S.W.3d 179, 185 (Tex. App.–Dallas 2009, no pet.). "A guardianship is neither necessary nor appropriate when a person is found to be competent." *In re Miller*, 299 S.W.3d at 185. If the trial judge had found appellee to be incapacitated, then the appropriate course of action would have been to appoint a guardian with full or limited authority over him. *Id.* (citing TEX. PROB. CODE ANN. § 602). "A conclusion that no guardian is needed is a determination that the proposed ward has sufficient capacity to care for himself. Such a conclusion is, in effect, a finding that the person is competent, and it is an express denial of a request to form a guardianship." *Id.*

## C. Whether Appellee's Special Appearance Was Defective

At the outset of our analysis of this issue, we will address appellant's contention that appellee's special appearance was "defective." Appellant asserts that: (1) appellee did not personally enter the special appearance; and (2) Gonzalez, appellee's attorney in Mexico, hired Gonzales, appellee's attorney in Texas, to represent appellee under a Mexican power of attorney, which has no authority in the United States because it does not have the requisite Apostille certification and does not expressly state that Gonzalez has the power to represent appellee outside of Mexico. Appellant also argues that the failure of Gonzales, appellee's attorney in Texas, to swear to the special appearance also renders the special appearance "defective." *See* TEX. R. CIV. P. 120a(1) ("Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion . . . .").

Here, Gonzalez, appellee's attorney in Mexico, swore to the special appearance.

It is undisputed that Gonzales, appellee's attorney in Texas, is licensed to practice law in Texas while Gonzalez, appellee's attorney in Mexico, is not. In any event, the language contained in the special appearance indicates that appellee hired Gonzalez to represent him in legal matters in Mexico and that, in order to challenge the guardianship proceedings brought by appellant, Gonzalez was required to contract with an attorney licensed in Texas to represent appellee. Herrera, appellee's attorney ad litem, confirmed this arrangement at the September 15, 2009 hearing. The record does not contain any objection filed by appellee contesting Gonzales's representation of him in these proceedings. Appellant does not cite, and we are not aware of, authority that supports his contention that the special appearance was "defective" because Gonzales represented appellee in the Texas court system.

With respect to his argument that Gonzalez's affidavit did not satisfy the requirements of rule 120a, appellant cites *Omniplan, Inc. v. New America Development Corporation*. *See* 523 S.W.2d 301, 304-05 (Tex. Civ. App.–Waco 1975, no writ). However, we do not believe that this case supports appellant's position. In *Omniplan*, the Waco Court of Appeals held that an affidavit satisfies the requirements of rule 120a if it is "intended 'to unreservedly swear to the allegations contained [within the special appearance].'" *Id.* at 304 (citing *A.H. Belo Corp. v. Blanton*, 133 Tex. 391, 129 S.W.2d 619, 623 (1939)). Here, Gonzalez, appellee's attorney in Mexico, executed a notarized affidavit stating that all of the allegations made in the special appearance were "true and correct" and that the allegations were "within his personal knowledge." Clearly, Gonzalez intended to swear to the allegations made in the special appearance. *See id.*

Furthermore, the record does not reflect that appellant filed a special exception to the alleged defect in Gonzalez's affidavit. *See id.* (noting that a failure to file a special exception to an alleged defect in an affidavit supporting a special appearance constitutes waiver of the issue and cannot be raised for the first time on appeal); *see also* TEX. R. CIV. P. 90.

Based on the foregoing, we do not find appellant's arguments to be persuasive, and we find that appellee's special appearance was effective and complied with Texas Rule of Civil Procedure 120a. *See* TEX. R. CIV. P. 120a.

## D. Specific Jurisdiction

Appellant conceded, at the September 15, 2009 hearing, that Texas courts do not have general jurisdiction over appellee and stated that "specific jurisdiction is what we have alleged." Thus, our analysis will focus on the requirements for establishing specific jurisdiction.

Appellant testified that the basis of the trial court's specific jurisdiction over appellee is appellee's Chase and IBC bank accounts opened in Brownsville and the house owned by appellee's wife. Appellant also notes that appellee has failed to present evidence suggesting that the exercise of personal jurisdiction by the Texas court system fails to comport with fair play and substantial justice.

Herrera, appellee's attorney ad litem, informed the trial court that he had spoken to appellee and determined that appellee was competent. *See In re Miller*, 299 S.W.3d at 187 (citing TEX. PROB. CODE ANN. § 692 (Vernon 2003) (requiring the probate court to dismiss an application for guardianship when an adult person is found to possess capacity

11

to care for himself and manage his property)). Herrera noted that appellee is a resident of Mexico and had lived there all of his life and that he "didn't want to be subject to the [Texas] court's jurisdiction." The trial court stated that:

> That's a dog fight in another country, especially if they all live over there. There's monies over here that belong to mom and dad, not to mijo.
>
> . . . .
>
> Everybody that's been there [the house located in Cameron County] says nobody lives there; nobody has ever lived there. It may be their property, but there's thousands and thousands of residents from Mexico who have homes over here, who come for a day and go back to Mexico.
>
> . . . .
>
> From everything I've seen here, these folks live in Mexico. I'm not going to give them jurisdiction to come over here and fight for something that they should be fighting in Mexico.
>
> . . . .
>
> Now, if I get any different information, other than they have a bank account here with two point something million dollars that looks like everybody wants to fight over, you know, that's their problem in Mexico. They've got jurisdiction there. I'm not going to drag these people from Valle Hermosa over here to the United States on my court order to figure out, number one, whether they're competent to be able to have a guardian, which two guardian ad litems that I appointed went and talked to them and actually talked to them, from their statements here, and seem to be competent, number one, which is not an issue at this point.
>
> . . . .
>
> Whoever has guardianship over the people, they can do whatever they want with the property, because they've got the authority. But mijo son doesn't have guardianship over mom and dad in Mexico. He's not going to get it here, because we don't have jurisdiction over these folks.

The trial court subsequently issued findings of fact and conclusions of law reflecting

12

the above-mentioned statements. In its findings of fact and conclusions of law, the trial court noted that appellee is a resident of Valle Hermosa and a registered Mexican voter, and held a B1/B2 visa that did not allow him to reside in the United States on a permanent basis. The trial court further noted that the evidence was insufficient to establish the trial court's jurisdiction in this matter and that, in a guardianship proceeding, the trial court was required to obtain jurisdiction over appellee's person before proceeding. Moreover, the trial court stated that appellee was domiciled in Mexico and that, like many other Mexican nationals, did not reside in the Cameron County home on a permanent basis.

Appellant's guardianship application sought to appoint appellant as guardian of appellee's person and estate because appellee's health problems allegedly rendered him incapacitated. It appears that appellant sought to manage appellee's entire estate, including properties and assets located in Mexico, as a result of appellee's alleged incapacitation. In support of his application, appellant provided several reports generated by doctors in Mexico outlining appellee's various maladies. For appellant to be named appellee's guardian and protector of his estate, it was necessary for the trial court to have determined that appellee is incapacitated. *See* TEX. PROB. CODE ANN. § 602; *see also In re Miller*, 299 S.W.3d at 185. However, before the trial court could reach the incapacitation issue, it was necessary for the trial court to establish jurisdiction over appellee's person. *See In re Miller*, 299 S.W.3d at 185; *see also In re Parker*, 275 S.W.3d 623, 627-628 (Tex. App.–Amarillo 2008, no pet.); *Ortiz v. Gutierrez*, 792 S.W.2d 118, 119 (Tex. App.–San Antonio 1989, writ denied) (holding personal service requirement under the guardianship statutes is jurisdictional, and therefore, the trial court properly dismissed the guardianship

proceeding when the proposed ward had not been personally served); *In re B.A.G.*, 794 S.W.2d 510, 513 (Tex. App.–Corpus Christi 1990, no writ) (holding that an allegedly incapacitated person must make a personal appearance "because that person's rights are being limited, even if for a short period of time"); *Redmon v. Leach*, 130 S.W.2d 873, 874-78 (Tex. Civ. App.–Dallas 1939, writ dism'd judgm't cor.) (dismissing a guardianship case for lack of jurisdiction where the ward was a resident of Oklahoma, was not of unsound mind, and had not been served with personal notice).

Here, appellant admitted that appellee lives, and has always lived, in Mexico. Furthermore, the fact that appellee's wife owns the Cameron County house does not establish that appellee is domiciled in Texas. The record contains evidence that: (1) nobody lives in the Cameron County house; and (2) the house has remained vacant for a substantial period of time. Moreover, the record does not conclusively establish that appellee has an ownership interest in the house, and such evidence of the acts of a third party are not relevant to our minimum-contacts analysis. *See Retamco Operating, Inc.*, 278 S.W.3d at 338-39; *see also Holten*, 168 S.W.3d at 784. Therefore, we cannot say that the trial court had personal jurisdiction over appellee solely based on appellee's potential ownership of the house.

The investment accounts at Chase and IBC banks do not reflect regular transactions made by appellee. Documents regarding the Chase investment account show that appellee removed shares of stock from one account and deposited them into another account on January 26, 2009. Documents pertaining to he IBC account indicated that appellee purchased a certificate of deposit on March 16, 2007, and that the account

14

matured on October 16, 2007.[11]  Neither of the account statements indicate that the transactions were conducted by a specific bank branch in Texas.  Further, to facilitate a claimed exemption from withholding taxes regarding his Chase investment account, appellee procured a post office box[12] and filed certain forms with the Internal Revenue Service.

Based on the evidence contained in the record, we find that appellee's contacts with Texas are attenuated and do not indicate that appellee purposefully availed himself of the jurisdiction of this state.  *See Retamco Operating, Inc.*, 278 S.W.3d at 338-39; *Holten*, 168 S.W.3d at 784; *Goodenbour*, 64 S.W.3d at 79 (noting that a single act can support jurisdiction but that a single act or occasional acts may be insufficient to establish jurisdiction if the nature and quality of the act create merely an attenuated connection with the forum); *Televentures, Inc.*, 12 S.W.3d at 907; *see also Burger King*, 471 U.S. at 475 n.18; *H. Heller & Co. v. Louisiana-Pacific Corp.*, 209 S.W.3d 844, 850 (Tex. App.–Houston [14th Dist.] 2006, pet. denied) (noting that single or occasional acts may be insufficient to establish jurisdiction where their nature and quality of the affiliation with the forum is attenuated).  We agree with the trial court that the guardianship proceeding should be handled in Mexico, especially considering the fact that appellant seeks to manage all of appellee's estate in this guardianship proceeding, the majority of which is located in Mexico.  Appellant has not directed us to any authority demonstrating that the trial court's conclusions of law were erroneous or that its findings of fact were manifestly unjust or

_____

[11] The statement from IBC contains a denotation in the letterhead that IBC is based in Brownsville, Texas; however, the statement does not indicate that the account was actually established at an IBC branch in Texas.

[12] The location of the post office box is unknown based on the record before us.

against the great weight and preponderance of the evidence.  *See Kelly*, 301 S.W.3d at 660; *Goodenbour*, 64 S.W.3d at 75; *Olson*, 21 S.W.3d at 715.  Accordingly, we conclude that the trial court did not err in granting appellee's special appearance.  *See* TEX. R. CIV. P. 120a(3); *see also Kelly*, 301 S.W.3d at 657 ("[W]e review de novo the trial court's determination of a special appearance.").  We therefore overrule appellant's first issue.

### III. MOTION FOR CONTINUANCE

In his second issue, appellant contends that the trial court violated Texas Rule of Civil Procedure 120a(3) and, thus, abused its discretion in denying his motion for continuance to procure evidence to establish the trial court's in personam jurisdiction over appellee.  *See* TEX. R. CIV. P. 120a(3).  Appellee argues that the trial court properly denied appellant's motion for continuance because the additional discovery sought by appellant "was a fishing expedition to obtain the private financial records of Appellee" and appellee has already confirmed that he had investment accounts in Texas.  Appellee further argues that the account information that appellant sought was not material to the determination of appellee's special appearance.

### A. Applicable Law

All courts have inherent power to grant or deny a continuance.  *McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex. App.–Amarillo 1999, no pet.) (citing *Bray v. Miller*, 397 S.W.2d 103, 105 (Tex. Civ. App.–Dallas 1965, no writ)).  When reviewing a trial court's order denying a motion for continuance, we consider on a case-by-case basis whether the trial court committed a clear abuse of discretion.  *See BMC Software*, 83 S.W.3d at 800 (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)).  A trial court abuses its discretion

16

when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Id.* Before we will reverse the trial court's ruling, it should clearly appear from the record that the trial court has disregarded the party's rights. *See Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986).

The Texas Supreme Court has considered the following non-exclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance filed for the purpose of gaining additional time for discovery: (1) the length of time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *BMC Software*, 83 S.W.3d at 800 (addressing the diligence and length of time on file factors); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (analyzing the materiality and purpose factors); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521-22 (Tex. 1995) (reviewing the materiality factor); *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) (addressing the diligence factor); *see also Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.–Houston [1st Dist.] 2001, no pet.) (using these factors to decide whether a trial court abused its discretion in denying a motion for continuance). To determine whether the trial court abused its discretion by granting appellee's special appearance without allowing additional time for discovery, we apply these factors to the evidence in the record before us. *See BMC Software*, 83 S.W.3d at 800.

## B. Discussion

In arguing that he should have been granted a continuance to conduct additional

discovery, appellant relies heavily upon Texas Rule of Civil Procedure 120a(3). *See* TEX.

R. CIV. P. 120a(3). Rule 120a(3) provides the following:

> The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony. The affidavits, if any, shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify.
>
> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, *the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just*.

*Id.* (emphasis added). When describing the trial court's power to enter orders to permit additional discovery, rule 120a(3) utilizes the term, "may," which does not connote a mandatory duty. *See* TEX. GOV'T CODE ANN. § 311.016(1) (Vernon 2005) ("'May' creates discretionary authority or grants permission or a power."); *Dallas County Cmty. College Dist. v. Bolton*, 185 S.W.3d 868, 873 (Tex. 2005); *see also Burkhart v. Sedgwick Claim Mgmt. Servs., Inc.*, No. 13-08-00351-CV, 2009 Tex. App. LEXIS 6983, at *11 (Tex. App.–Corpus Christi Aug. 31, 2009, no pet.) (mem. op.). Thus, as noted above, it was within the sole discretion of the trial court to determine whether to grant appellant a continuance to procure additional discovery. *See* TEX. R. CIV. P. 120a(3); *see also Barron v. Vanier*, 190 S.W.3d 841, 847 (Tex. App.–Fort Worth 2006, no pet.); *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 412 (Tex. App.–Corpus Christi 1999, no pet.).

In his September 14, 2009 motion for continuance, appellant asserted, as bases for the continuance, that he was only given two weeks to respond to appellee's special

appearance. Appellant further asserted that "he has reason to believe that the Proposed Ward, ARMANDO GARCIA CARDENAS has assets in the United States and in particular Cameron County where he has established 'contacts' within this Court's jurisdiction." On appeal, appellant, in arguing that the trial court abused its discretion by denying his motion for continuance, relies heavily on the *Barron* decision from the Fort Worth Court of Appeals. *See* 190 S.W.3d at 851. We find the facts in *Barron* to be distinguishable.

In *Barron*, the Fort Worth Court concluded that the trial court abused its discretion in denying appellant's motion for continuance in a case pertaining to allegedly defamatory statements made by California residents on an Internet message board about a Texas resident who was the chief operations officer of First Cash Financial Services. *Id.* at 843-44, 851. The *Barron* court reasoned that the additional information that appellant sought to discover, including business communications, advertising, contacts, and internet postings mentioning Texas, would aid in determining whether Texas courts had personal jurisdiction over the California residents and that appellant did not have sufficient time to conduct discovery regarding jurisdiction, when less than two weeks passed between a federal court order, and the filing of a special appearance and the hearing on the special appearance was set for approximately two weeks later. *Id.* at 847-51.

As noted above, appellee filed his special appearance on August 28, 2009, and the trial court granted appellant two continuances and re-set the hearing on appellant's guardianship application for September 15, 2009, more than two weeks after the filing of the special appearance. Nevertheless, in his appellate brief, appellant states that additional discovery would allow him to ascertain: (1) whether appellee has an ownership

19

interest in the Cameron County home; (2) the existence of investment accounts at Chase Bank, including when they were opened, how often transactions took place, and any changes in the account status; (3) the number of visits made to Texas by appellee or other interested parties; and (4) United States tax filings. However, most, if not all, of the additional information sought by appellant is already contained in the record. In fact, appellant attached the information to his first amended application for guardianship filed on September 15, 2009.

Included as exhibits to his first amended guardianship application are: (1) a report produced by the Cameron County Appraisal District listing the house at 809 Morelos in Rancho Viejo, as owned by Carmen Garcia, appellee's wife; (2) a report created by Chase Investment Services Corporation listing the account numbers and types of investments in two separate accounts owned by appellee; (3) a statement reflecting the opening date, term, balance, and other pertinent information regarding appellee's investment account at IBC; and (4) a "Certificate of Foreign Status of Beneficial Owner United States Tax Withholding" filed with the United States Internal Revenue Service by appellee. Herrera, the attorney ad litem for appellee, stated at the September 15, 2009 hearing that appellee and other people in Valle Hermosa told him that appellee had never lived in the United States. Moreover, Deputy Perez noted in his affidavit that he was told by neighbors that the residence at 809 Morelos "is always empty" and that "no one is ever there."

Based on our review, most of the additional information sought by appellant is already contained in the record, and we cannot say that appellant's rights were disregarded. *See* TEX. R. CIV. P. 120a(3); *Tenneco Inc.,* 925 S.W.2d at 647; *CBI Indus.,*

20

*Inc.*, 907 S.W.2d at 521-22; *Yowell*, 703 S.W.2d at 635; *Barron*, 190 S.W.3d at 849-50; *see also Fountain v. Burklund*, No. 03-01-00380-CV, 2001 Tex. App. LEXIS 8252, at *17 (Tex. App.–Austin Dec. 13, 2001, pet. denied) (not designated for publication) (stating that a party seeking a continuance must demonstrate sufficient cause and, when the basis for the motion is the "want of testimony," the movant must show that the testimony is material and cannot be procured from any other source and that he has used due diligence to secure it) (citing TEX. R. CIV. P. 251, 252). Moreover, appellant has not demonstrated his diligence in procuring the requested information. *See BMC Software*, 83 S.W.3d at 800; *see also Wood Oil Distrib., Inc.*, 751 S.W.2d at 865. As a result, we conclude that the trial court did not abuse its discretion in denying appellant's motion for continuance for the purposes of procuring additional discovery. *See* TEX. R. CIV. P. 120a(3); *BMC Software*, 83 S.W.3d at 800; *Yowell*, 703 S.W.2d at 635; *see also Barron*, 190 S.W.3d at 847; *Castro*, 8 S.W.3d at 412. We overrule appellant's second issue.

## IV. MOTION FOR SUBSTITUTE SERVICE

In his third issue, appellant asserts that the trial court abused its discretion in denying his motion for substitute service even though the motion was "in proper form" and it is undisputed that appellee owns a home in Cameron County. Appellee counters by arguing that appellant has failed to preserve this issue for appeal because he did not object to the trial court's denial at the September 15, 2009 hearing and he did not indicate in his notice of appeal that he intended to appeal the trial court's ruling on the motion for substitute service.[13]

---

[13] Because appellant has failed to preserve this issue for appeal, we need not analyze whether appellant has a right to appeal from the denial of a motion for substitute service. *See* TEX. R. APP. P. 47.1.

21

Texas Rule of Appellate Procedure 25.1(d)(2) provides, among other things, that the notice of appeal in a civil case must "state the date of the judgment or order appealed from." *See* TEX. R. APP. P. 25.1(d)(2); *see also Dugan v. Compass Bank*, 129 S.W.3d 579, 581 (Tex. App.–Dallas 2003, no pet.). Here, appellant only stated that he was appealing the trial court's interlocutory orders on the special appearance and the motion for continuance. Appellant's notice of appeal never indicates an intent to appeal the trial court's denial of his motion for substitute service. Furthermore, the record does not reflect that appellant objected to the trial court's ruling on this motion at the September 15, 2009. *See* TEX. R. APP. P. 33.1(a)(1); *Gallardo v. Ugarte*, 145 S.W.3d 272, 276 (Tex. App.–El Paso 2004, pet. denied); *see also Old Republic Ins. Co. v. Weeks*, No. 13-07-00451-CV, 2009 Tex. App. LEXIS 4139, at *14 (Tex. App.–Corpus Christi June 11, 2009, pet. denied) (mem. op.) ("To preserve error for appeal, a party must make a timely, specific objection to the trial court that names the grounds for the objection with sufficient specificity."). Therefore, based on the foregoing, we conclude that this issue is not preserved for appeal. *See* TEX. R. APP. P. 25.1, 33.1; *see also Parrish v. Rutherford*, 159 S.W.3d 114, 117 (Tex. App.–Corpus Christi 2004, no pet.) (holding that an issue was not preserved for appeal because appellants' notice of appeal failed to specify the order from which the purported issue arose). Accordingly, we overrule appellant's third issue.

## V. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgments of the trial court.

ROGELIO VALDEZ,
Chief Justice

Delivered and filed the
24th day of June, 2010.